**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 94-30519

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN M. CLEMENTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____

January 22, 1996

Before HIGGINBOTHAM, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant John M. Clements appeals his conviction for attempting to evade or defeat the payment of federal income tax, in violation of 26 U.S.C. § 7201, and for making a false statement to a federal agency, in violation of 18 U.S.C. § 1001. We affirm.

I

As an architect and business man, Clements was involved in several different business entities in Baton Rouge, Louisiana. One was a real estate management company called Clements Properties. Another was Clements Blanchard and Associates, Inc. ("CBA"), an architectural firm. Clements caused these companies to

incur large tax liabilities by directing them not to turn over to the Internal Revenue Service ("IRS") the payroll taxes which had been withheld from employees' salaries. In addition to his own personal income tax liability, Clements was eventually personally assessed the payroll tax liability for these two companies in his capacity as a "responsible person."

The IRS officer assigned to his case, June Dow, spent many months attempting to work out ways for Clements to pay off his tax liability. Aside from the prospect of future projects or the sale of stock, Clements repeatedly told Dow that his only source of income was CBA, the architectural firm. Clements assured Dow that he would be able to satisfy the tax liability once CBA was paid on its contract with Hannover Corporation for services performed in connection with Place Vendome, a shopping mall project in Baton Rouge. Despite repeated assurances, the IRS never received any money, and Dow eventually decided to file a lien on CBA's property and to levy the firm's contract with Hannover, as well as Clements' personal bank accounts. None of these actions were successful in securing any funds to pay down Clements' tax liability.

When Clements met with Dow that summer, he told her that CBA had been dormant since the lien had been filed and that he had discharged all of his employees. Clements also told her that he had no income from any source and that his wife was paying all their necessary living expenses. Evidence at trial established that none of this was true. Most significantly, Clements had signed a separate, personal contract with Hannover Corporation,

replacing the original contract between Hannover and CBA, and was receiving substantial sums of money from the Place Vendome project. Clements never told Dow or the IRS that he had entered into a new contract or that he was receiving any income.

Following a two-count indictment, a jury convicted Clements of attempting to evade taxes by hiding the receipt of over $150,000 paid in connection with the Place Vendome project, and of making false statements to an employee of the Internal Revenue Service. At sentencing, the district court decided to depart upwards from the Sentencing Guidelines because Clements had obstructed justice after he was convicted. The district court sentenced Clements to a term of imprisonment of fifty-one months, and ordered to pay a fine and make restitution to the IRS. Clements filed a timely notice of appeal from both his conviction and sentence.

## II

Clements argues that the district court made a number of evidentiary errors. The decision whether to admit testimony or other evidence is committed to the sound discretion of the trial judge. *United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 107, 133 L. Ed. 2d 60 (1995). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Scott*, 48 F.3d 1389, 1397 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 264, ___ L. Ed. 2d ___ (1995).

## A

Clements contends that the district court erroneously excluded

-3-

several letters he wrote relating to his financial projects. Having reviewed the record, we conclude that Clements never attempted to introduce the letters into evidence, and the district court was therefore never required to rule on whether the letters were admissible. The record contains only three instances in which defense counsel brought the letters to the district court's attention.

During the cross-examination of IRS officer June Dow, the Government objected on hearsay grounds to defense counsel's attempt to elicit testimony regarding a letter Clements wrote to Dow prior to the period of the indictment. The district court held a bench conference on the objection and the possible grounds for sustaining it. After some lengthy discussion, the district court eventually requested defense counsel to "go through a trial run" of his cross-examination of Dow outside the presence of the jury. At the conclusion of the trial run, defense counsel stated, "If we handle it that way, then I'll bypass the letter entirely." The letter was never offered into evidence, and the district court never ruled it was inadmissible.[1]

---

Clements argues that prior to the trial run the district court had already ruled the letter was inadmissible. The record does not support this claim. During the bench conference, the district court discussed several possible grounds for excluding testimony regarding the contents of the letter. The district court also ruled at one point that defense counsel was permitted to cross-examine Dow regarding her independent recollection of matters discussed in the letter, and the accuracy of any notes she took, but that defense counsel was not permitted to use the letter to impeach her. The district court had not, however, ruled on the Government's objection, and the court made its lack of ruling perfectly clear to defense counsel, Mr. Lorenzi, immediately prior to the trial run:

    MR. LORENZI: I'll tell you what I'll do, then, in light -- first of all, in light of the court's ruling, and I don't want my proceeding

During the direct examination of Clements, defense counsel sought to elicit testimony that Clements had written to Dow and notified her about a proposal by Hannover Corporation to purchase a block of CBA stock. The district court again conducted a trial run of the testimony outside the presence of the jury. At this bench conference, the district court asked to see the letter Clements wrote to Dow about the negotiations with Hannover Corporation. The district court then ruled that Clements could testify that he was trying to sell CBA in order to raise money to pay the tax owed, that he notified Dow of this fact, and that he later withdrew from the negotiations. Concerned about the prejudicial nature of the testimony, the district court, however, would not allow Clements to testify about misrepresentations or other misconduct by the promoters of Place Vendome in order to explain why he withdrew from the proposed agreement. At no point did the district court rule that the letter itself was inadmissible, and defense counsel never attempted to introduce the

this way, obviously, to be a waiver, your honor. We would ask that the objection be noted for the record.
    THE COURT: I haven't overruled it.
    MR. LORENZI: Okay. I thought you had. That's why I'm somewhat confused.
    THE COURT: No. I told you -- I said, let's go through a trial run.
    MR. LORENZI: I'll tell you what I would do, then, would be to ask -- well, first of all, do you want to instruct the witness not to actually answer the question?
    THE COURT: I want him to answer -- I want her --
    MR. LORENZI: Oh, you do want her to answer.
    THE COURT: -- to answer it now, and then if I say it's admissible, we'll do it again in front of the jury. If I say it's not admissible, it's your proffer.
    MR. LORENZI: All right. Then I understand how to proceed.

letter into evidence.[2]

Similarly, the first time the letters were discussed, during the cross-examination of William G. Hayes, whose financial consulting firm was appointed receiver for Place Vendome, Inc., defense counsel did not offer any of the letters into evidence, and the district court did not rule any of them inadmissible. We therefore decline to reach any of Clements' arguments regarding the admissibility of these letters.[3]

B

Clements argues that the district court erroneously excluded testimony as to why he believed he could not open a checking

---

Moreover, defense counsel acknowledged at one point that he did not intend to introduce into evidence the documents relating to the proposed transaction with Hannover Corporation:

> THE COURT:   I mean, being fair to both sides now. You know, it would be very easy for the Government to say, "Put everything in there is about Mr. Recile and Ms. Phillips and everybody else," and then that's the typical argument that people make. If one's guilty, everybody's guilty. I've been doing the best job I can to keep out that other situation to the extent that I can understand the facts. So I'll let him testify, since the May time period is involved. I'll let him testify that he was trying to sell the company to get some value to pay the taxes and that he notified Ms. Dow of the fact, if in fact, he did, and that he withdrew from this agreement, or the agreement didn't go through for whatever reason, and that's where we are. And that's what I'll let happen.
> MR. LORENZI:  Well, I haven't produced any of that to the witness. It's questionable hearsay.
> THE COURT:    Well, it is, but you don't need the documents to show --
> MR. LORENZI:  No, I don't need the documents.

Clements's failure to make an offer of proof to the trial court as to which letters, or portions of the letters, he believed admissible means that he has also failed to preserve the record for our review. Even if we accepted Clements' argument that the trial court made a ruling during the these bench conferences with respect to the letters, we are unable to determine from this record exactly which letters are being discussed. We are therefore unable to adequately determine the propriety and harmfulness of any such ruling by the district court. *See United States v. Scott*, 48 F.3d 1389, 1397 (5th Cir. 1995) (holding that defendant did not preserve the issue for appeal where he failed to make an offer of proof to the district court as to which portions of the criminal record of the government's witness should have entered into evidence).

account.  Clements contends on appeal he would have testified that because of his poor rating by "CheckFax"))the result of a bankruptcy and bounced checks))"it was his impression that banks would not allow him to open an account."  The district court sustained an objection to defense counsel's question regarding the CheckFax rating on the basis of hearsay.  Clements argues that his testimony was not hearsay because it was not being introduced "to prove the truth of the matter asserted."  FED. R. EVID. 801(c).

We find that Clements has failed to preserve any error for our review.  Rule 103(a)(2) of the Federal Rules of Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."  FED. R. EVID. 103(a)(2).[4]  "[T]his circuit will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial."  *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed. 2d 34 (1979).  Although a *formal* offer is not required to preserve error, the party must at least inform the trial court "what counsel intends to show by the evidence and why it should be admitted."  *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994).

---

The rule also provides that we are not precluded from "taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."  FED. R. EVID. 103(d).  We find there was no plain error.

Defense counsel in this case made no attempt to inform the district court that Clements' testimony about his CheckFax rating was being sought to prove something other than the truth of his rating. *See United States v. Grapp*, 653 F.2d 189 (5th Cir. 1981) (declining to consider a hearsay exception as a basis for the admissibility of evidence where the argument was not presented to the trial court); *United States v. Wells*, 525 F.2d 974, 976 (5th Cir. 1976) ("Inasmuch as no suggestion was made at the time that the evidence sought would fall within some exception to the hearsay rule, appellants cannot properly contend now that it was error to sustain Government objections to the questions in issue."); *cf. United States v. Gonzalez*, 700 F.2d 196, 201 (5th Cir. 1983) (holding that defendant had sufficiently explained basis for hearsay exception to trial judge to preserve it for review).[5] We therefore find that the district court did not abuse its discretion.

C

Clements next contends that the district court erred by allowing the Government to admit evidence of prior "bad acts" under

---

Moreover, the record reveals that the district court subsequently overruled an objection to the following question by defense counsel: "Did you know back in March though July 1991, why you couldn't open a bank account?" This question was designed to elicit directly testimony regarding Clements' understanding of why he was unable to open an account, including the effect of his CheckFax rating. After the objection was overruled, however, defense counsel did not instruct Clements to answer the question, but proceeded instead to a new line of questions regarding whether Clements had ever attempted to open a bank account.

Rule 404(b).[6] The Government elicited testimony from two witnesses that Clements was aware of the payroll tax liability at the time it arose. The first witness, William A. Clark, had worked for CBA as comptroller, with responsibility for the company's accounting and financial administration. The second witness, William P. Gaines, Jr., had worked as comptroller for Clements Properties. Both testified that they repeatedly discussed with Clements the outstanding payroll tax that was due and that he intentionally decided not to pay the tax at that time.

Clements failed to object to this testimony at trial and must therefore show "plain error." *See* FED. R. CRIM. P. 52(b).[7] Under the "plain error" standard, we correct forfeited errors only where they are "clear" or "obvious" and "affect substantial rights." *United States v. Olano*, 507 U.S. 725, ___, 113 S. Ct. 1770, 1776-79, 131 L. Ed. 2d 508 (1993); *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, ___ U.S. ___,

---

FED. R. EVID. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Clements incorrectly argues that he has preserved a higher standard of review by filing a pretrial objection to the Government's Rule 404 Notice (which contained no mention of the two comptrollers or their testimony). *See United States v. Graves*, 5 F.3d 1546, 1551-53 (5th Cir. 1993) (reviewing for plain error where defendant did not make contemporaneous objection to admission of evidence that was subject of pretrial ruling on motion in limine), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1829, 128 L. Ed. 2d 459 (1994).

115 S. Ct. 1266, 131 L. Ed. 2d 145 (1995). Even where the errors are clear or obvious, we will not exercise our discretion to correct the forfeited errors unless they seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at \_\_\_, 113 S. Ct. at 1776; *Calverley*, 37 F.3d at 162.

In deciding whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we must determine if the evidence in question is "intrinsic" or "extrinsic." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* (internal quotation marks omitted). As one of the elements of the tax evasion charge, the Government needed to prove that Clements acted "wilfully." *United States v. Terrell*, 754 F.2d 1139, 1144 (5th Cir.), *cert. denied*, 472 U.S. 1029, 105 S. Ct. 3505, 87 L. Ed. 2d 635 (1985). Direct evidence that Clements was aware of his tax liability, even though prior to the time period of the indictment, was "inextricably intertwined" with the crime charged. We therefore find that the testimony was "intrinsic" evidence which does not fall within the meaning of Rule 404(b). *See United States v. Dula*, 989 F.2d 772, 777 (5th Cir.) ("In developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant."), *cert. denied*, \_\_\_ U.S. \_\_\_,

114 S. Ct. 172, 126 L. Ed. 2d 131 (1993).  The district court committed no error by admitting this evidence, plain or otherwise.[8]

III

Clements contends that the jury charge was defective because the district court did not give a requested instruction that "attempting to postpone the payment of taxes" is not sufficient to constitute evasion.  We review jury instructions "to determine whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them."  *United States v. Box*, 50 F.3d 345, 353 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 309, ___ L. Ed. 2d ___ (1995) (internal quotation marks omitted).  We review the district court's refusal to give an instruction for abuse of discretion.  *United States v. Pennington*, 20 F.3d 593, 600 (5th Cir. 1994).  "The refusal to give a jury instruction constitutes error only if the instruction (1) was substantially correct, (2) was not

---

Clements makes several other assertions of error regarding evidence that was or was not admitted, all of which we find to be without merit.  Clements argues that the district court erred by excluding statements made by Dow.  Having reviewed the record, we conclude that the district court did not abuse its discretion with respect to any statement made by Dow.

Clements also argues that the district court erred by allowing the Government to introduce the rebuttal testimony of Carolyn Herbert, Dow's "group manager," because it was in response to Clements' testimony elicited by the Government on cross-examination.  Clements did not object at trial, and we find there was no "plain error."  *See United States v. Martinez*, 962 F.2d 1161, 1165-66 & n.10 (5th Cir. 1992) (holding it was not plain error to admit testimony to rebut statement made by defendant on cross-examination).

Finally, Clements contends that the Government violated the Jencks Act by not turning over additional investigatory histories by Dow.  Clements, however, did not request that the district court review the statements *in camera*, nor has he requested that the statement be produced for review on appeal.  *See United States v. Edwards*, 702 F.2d 529, 531 (5th Cir. 1983).  We therefore find that Clements has failed to establish any error on this ground.

-11-

substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense." *Id.*

Under count one, the district court instructed the jury that the evidence must establish beyond a reasonable doubt that Clements knowingly and intentionally attempted to evade or defeat the payment of taxes owed.[9] This instruction accurately sets out the elements the Government must prove to establish a violation of 26 U.S.C. § 7201. *See Terrell*, 754 F.2d at 1144. Because we conclude that the charge to the jury substantially covers Clements' proposed instruction, we find that the district court did not abuse its discretion.[10]

IV

Clements contends that the district court made several errors in calculating his sentence. We review the district court's application of the Sentencing Guidelines *de novo*. *United States v. Radziercz*, 7 F.3d 1193, 1195 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1575, 128 L. Ed. 2d 218 (1994). The district

---

The district court specifically instructed the jury that the Government had to prove beyond a reasonable doubt "[t]hat when the defendant engaged in the above-mentioned acts or acts, he did so with the purpose of evading or attempting to evade the payment of taxes."

Clements also contends that the district court should have granted a new trial because of the errors asserted above. "The ruling on a new trial motion is reviewed for abuse of discretion; new trials are granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Cooks*, 52 F.3d 101, 103 (5th Cir. 1995) (footnote omitted). Having rejected Clements' claims of error, we also conclude that the district court did not abuse its discretion by denying his motion for a new trial.

court's factual findings will be affirmed unless they are clearly erroneous. *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993). "A factual finding is not clearly erroneous as long as the finding is plausible in light of the record as a whole." *Id.* (internal quotation marks omitted).

A

Clements argues that the district court improperly computed the loss amount for both counts in determining the base offense level. Under count one for tax evasion, Clements argues that the tax loss should be limited to the value of the assets he attempted to hide from the Internal Revenue Service. Had the offense been successfully completed, Clements contends, he would only have evaded $150,000 in taxes.[11]

The district court determined the base offense level using the sum of the tax assessments against Clements by the IRS as of the indictment period, exclusive of interest and penalties. The total tax liability evaded was calculated to be $258,712.03.[12] The 1990 Sentencing Guidelines[13] define "tax loss" as "the total amount of the tax that the taxpayer evaded or attempted to evade." U.S.S.G.

---

We note that the indictment alleged that Clements "received *more* than $150,000.00 in cash and checks payable to CLEMENTS from the Place Vendome promoters," and there was undisputed evidence at trial that Clements in fact received approximately $270,000 from Place Vendome during the time period of the indictment. (emphasis added).

This figure represents the sum of the following assessments: (1) Clements' 1989 personal income tax liability))$19,527.70; (2) Clements' tax debt as a "responsible person" for CBA))$233,524.45; and (3) Clements' tax debt as a "responsible person" for Clements Properties))$5,659.88.

Clements does not dispute that the district court properly used the 1990 Sentencing Guidelines.

§ 2T1.1(a). In *United States v. Brimberry*, 961 F.2d 1286 (7th Cir. 1992), the defendant argued that the "tax loss" should be the value of her hidden assets (jewelry worth approximately $69,000, plus $8,000 equity in her house)))the amount of money the IRS could actually recover from her))rather than, as the district court found, the $7 million assessed income tax deficiency. While recognizing that its interpretation of "tax loss" could lead to some strange results if the discrepancy between the tax deficiency and the hidden assets grew too wide, the Seventh Circuit concluded that the plain language of § 2T1.1 required it to affirm the district court's finding that $7 million was the "tax loss" that she attempted to evade. 961 F.2d at 1292. We agree, and hold that the "tax loss" evaded means the tax deficiency assessed, exclusive of interest and penalties, rather than the amount that the IRS could actually recover.[14] *See also United States v. Moore*, 997 F.2d 55, 60-62 (5th Cir. 1993) (concluding that "tax loss" is to be calculated in the same manner under § 2T1.4, for assisting tax fraud, § 2T1.3, for false statements on tax returns, and § 2T1.1, for tax evasion, and holding that "tax loss" under § 2T1.4 means

---

Clements argues that the district court erred by not considering a 1993 clarifying amendment. *See* U.S.S.G. § 1B1.11(b)(2) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."). Clements argues that the district court should have considered the following language: "If the offense involved tax evasion . . . that tax loss is the total amount of the loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." *See* 1993 Guidelines Manual, Appendix C, amendment 491. We note that this amendment also states, "If the offense involved willful failure to pay tax, *the tax loss is the amount of tax that the taxpayer owed and did not pay*." *Id.* (emphasis added). We find that this clarifying amendment is entirely consistent with our holding.

the "intended" tax loss rather than the government's actual tax loss).

Under count two for false statements, the district court used the same $258,712.03 figure in determining the loss amount. Clements was sentenced in consideration of § 2F1.1 for offenses involving fraud or deceit, which provides that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." U.S.S.G. § 2F1.1, comment. (n.7). We have previously held that a district court is to be given wide latitude in determining the amount of loss caused by false statements, and that it is "proper to calculate loss based on the risk engendered by the defendant's criminal conduct, even where the actual loss was lower." *United States v. Brewer*, 60 F.3d 1142, 1145 (5th Cir. 1995).[15] We find that the district court did not err by equating the "loss amount" with the sum of Clements' tax liability for purposes of calculating the offense level under count two.[16]

B

Clements next contends that the district court erred by

---

Section 2F1.1 also states that where offenses involving fraudulent statements are prosecuted under a general statute like 18 U.S.C. § 1001, we should apply the more specific guideline if it is more apt. U.S.S.G. § 2F1.1, comment. (n.13). The crime of false statements to a government officer is more aptly covered by § 2T3.1. *Id.* We have held that under § 2T3.1 and § 2T1.1, "tax loss" is to be calculated in a similar manner in both provisions. *United States v. Moore*, 997 F.3d 55, 58-59 (5th Cir. 1993) (holding that "tax loss" was properly calculated as "intended" loss rather than actual loss).

Clements also argues that the $258,712.03 figure was inaccurate because he should have received credit for property previously seized by the IRS. The district court concluded that the IRS had already appropriately applied the value of these properties to Clements' tax liabilities. Having reviewed the record, we do not find this conclusion to be clearly erroneous.

-15-

providing a two-level enhancement to the sentence imposed under the tax evasion count for the use of "sophisticated means." The 1990 Sentencing Guidelines provide, "If sophisticated means were used to impede discovery of the nature or extent of the offense, increase by two levels." U.S.S.G. § 2T1.1(b)(2). The Guidelines define "sophisticated means" as including "conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied for example, where the defendant used offshore bank accounts, or transactions through corporate shells." U.S.S.G. § 2T1.1, comment. (n.6). The background comments to the Guidelines also state, "Although tax evasion involves some planning, unusually sophisticated efforts to conceal the evasion decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes." U.S.S.G. § 2T1.1, comment. (backg'd). We review the district court's factual finding that Clements used sophisticated means to impede discovery of his offense for clear error. *United States v. Charroux*, 3 F.3d 827, 836-37 (5th Cir. 1993). "We will not find a district court's ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed." *Id.*

Clements argues that his use of cashier's checks merely constituted the acts of his offense, and was necessitated by his lack of a bank account. When Clements' scheme to evade taxes and impede discovery of his offense is viewed in its entirety, however, we find no clear error in the district court's finding of

"sophisticated means." In early 1991, IRS agent Dow informed Clements that she had finally decided to file a lien against CBA, and to levy the firm's bank accounts and contract with Hannover Corporation regarding the Place Vendome project. Shortly thereafter, Clements entered into a personal contract with Hannover Corporation for continuing architectural services, supplanting the contract between CBA and Hannover.[17] Pursuant to this new contract, Clements received over $270,000 during the indictment period from March through July. Of the twenty-three checks he received in this period, almost all of them were converted into multiple cashier's checks, sometimes as many as thirteen. Some of these cashier's checks were made out to creditors, but most of them were made payable to John Clements himself. These latter cashier's checks, if they were not cashed, were then often deposited into the separate bank account of Clement's wife or converted into additional cashier's checks.

Even though Clements' transactions did not involve the use of offshore bank accounts or fictional entities, his use of multiple cashier's checks and his wife's separate bank account to obscure the link between the money and Place Vendome or himself undeniably made it more difficult for the IRS to detect his evasion. This case does not present the situation in which an individual taxpayer merely "completed his individual 1040 form with false information to avoid paying some of his federal taxes." *Charroux*, 3 F.3d at

---

[17] The original contract, dated September 5, 1990, was for a one-year term.

837 (internal quotation marks omitted).  The district court's finding of sophisticated means was not clearly erroneous.  *See id.* (affirming a finding of sophisticated means where the defendants participated in a "land flip" scheme to purchase property for inflated prices and had sought the advice of tax professionals "in order to lend the appearance of legitimacy to the dealings"); *cf. United States v. Rice*, 52 F.3d 843, 849 (10th Cir. 1995) (finding clear error where defendant "merely claimed to have paid withholding taxes he did not pay").

C

Clements contends that the district court also erred by providing for a two-level enhancement because the offense involved "more than minimal planning."  U.S.S.G. § 2F1.1(b)(2)(A).  Under the Guidelines, more than minimal planning "is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."  U.S.S.G. § 1B1.1, comment. (n.1(f)).  More than minimal planning is also defined as "more planning than is typical for commission of the offense in a simple form," or is deemed to exist "if significant affirmative steps were taken to conceal the offense."  *Id*.  We review the district court's determination of the existence of "more than minimal planning" for clear error.  *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993).

His "repeated acts," Clements argues, were merely the repetition of the same false statement to Dow that he had not received any money from Hannover, and this repetition was purely

opportune because he was simply responding to further questioning by Dow. We disagree. The record reveals that Clements had frequent contact with Dow over an extended period of time and made numerous false statements to Dow and her group manager, Carolyn Herbert. The mere fact that the meetings and conversations were initiated by Dow does not make Clements' false statements "purely opportune." Clements' repeated false statements were all deliberate actions in furtherance of the one central scheme to evade his payroll taxes. *See United States v. Channapragada*, 59 F.3d 62, 65-66 (7th Cir. 1995) (affirming enhancement for "repeated acts" where defendant misrepresented value of collateral and repeated lie three more times). The Seventh Circuit in *Channapragada* rejected the argument that the defendant was not responsible for the repetition of his lie merely because he had not foreseen that the loan would be broken up into several smaller, less risky loans. *Id.* Similarly, Clements is not shielded from the consequences of his repeated actions by the vigilance of the IRS agent. The district court's finding of "more than minimal planning" was not clearly erroneous.

V

Clements contends that the district court erred by departing upward four levels on the basis of multiple acts of obstruction of justice committed by Clements following his conviction. A district court may depart from the sentencing range set by the Guidelines when the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by

-19-

the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0. We will affirm a departure from the Sentencing Guidelines if it is based on "acceptable reasons" and the degree of departure is "reasonable." *United States v. Velasquez-Mercado*, 872 F.2d 632, 637 (5th Cir.), *cert. denied*, 493 U.S. 866, 110 S. Ct. 187, 107 L. Ed. 2d 142 (1989) (internal quotation marks omitted); *see also United States v. Lambert*, 984 F.2d 658, 663 (5th Cir. 1993) (en banc).[18]

A

As an initial matter, Clements argues that he did not receive adequate notice of the district court's intention to upward depart. A district court must give "reasonable notice" that it is contemplating an upward departure, and such "notice must specifically identify the ground on which the district court is contemplating an upward departure." *Burns v. United States*, 501 U.S. 129, 138-39, 111 S. Ct. 2182, 2187, 115 L. Ed. 2d 123 (1991). The evening prior to the original sentencing hearing, the district court faxed to all parties a notice of its intention to consider an upward departure. At the sentencing hearing the next day, the district court explained that it was considering an upward departure because of misleading statements in the pre-sentence report and other instances of obstruction of justice subsequent to conviction, including Clements' actions in transferring certain

_____

Because of this additional reasonableness requirement, "the judge must offer reasons explaining why the departure is justified in terms of the policies underlying the sentencing guidelines." *United States v. Mejia-Orosco*, 867 F.2d 216, 221 (5th Cir. 1989).

stock certificates into a trust for his children despite the IRS lien on his property.  With Clements' consent, the sentencing hearing was then rescheduled for six days later.  Having reviewed the record, we find that the district court provided Clements with reasonable notice of its intent to upward depart and the grounds for such departure.

B

The district court based its upward departure on a finding of at least four instances of obstruction of justice.  In calculating the appropriate departure, the district court took guidance from § 3C1.1, which states, "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."  U.S.S.G. § 3C1.1.  An example of the type of conduct to which this enhancement applies is "providing materially false information to a probation officer in respect to a presentence or other investigation for the court."  U.S.S.G. § 3C1.1, comment. (n.3(h)).  The district court also found relevant the following example of applicable conduct: "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceedings . . . or attempting to do so."  U.S.S.G. § 3C1.1, comment. (n.3(d)).[19]

---

[19] The commentary to the Guidelines states, "'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."  U.S.S.G. § 3C1.1, comment. (n.5).

The district court imposed an upward departure for only two of the violations, for a total departure of four levels.

In determining whether the upward departure was based on acceptable reasons, we review the district court's factual findings at sentencing for clear error. *See United States v. Edwards*, 65 F.3d 430, 432 (5th Cir. 1995). At sentencing, a district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3.; *United States v. Bermea*, 30 F.3d 1539, 1576 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1825, 131 L. Ed. 2d 746 (1995).

First, the district court found that Clements had reported a $212,500 unsecured debt to his probation officer when in fact it was secured by his stock in Capitol Lake Properties, Inc. The district court implicitly concluded that this intentional misrepresentation was material to the probation officer's efforts to calculate Clements' ability to pay restitution. More significantly, the district court found that Clements had misled the IRS when he sold his stock in Capitol Lake Properties, Inc., valued at $292,000, to a trust in the name of his two children and payable in installments over a ten-year period. When asked a day before entering into this transaction what his plans were for the stock, Clements had replied that his only options were to sell the stock back to the corporation or its shareholders. Clements had been specifically instructed by another IRS agent to call her

-22-

before finalizing any sale of the stock. There was testimony at the sentencing hearing that the IRS would not have approved of the sale in light of the payment period over ten years. Clements also failed to inform the IRS that the stock had been moved from the bank where, the day before, he had represented it was located. Having reviewed the record, we find that the district court was not clearly erroneous in concluding that Clements willfully misled the IRS regarding the sale of his stock which he knew was subject to an IRS lien and about which the IRS had made repeated specific inquiries.[20] Accordingly, we find that the district court based its upward departure on acceptable reasons. *See United States v. George*, 911 F.2d 1028, 1033-34 (5th Cir. 1990) (affirming upward departure based on obstruction of justice following conviction).

Clements argues that even assuming that an upward departure was appropriate, the four level enhancement imposed was unreasonable. "The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing." *Williams v. United States*, 503 U.S. 193, ___, 112 S. Ct. 1112, 1121, 117 L. Ed. 2d 341 (1992). The presentence report, which the district court adopted, calculated Clements' offense level as eighteen, with a range of twenty-seven to thirty-three months imprisonment. Because of Clements' obstruction of justice, the district court adjusted the offense level upward to twenty-two,

---

Clements argues that his conduct cannot be considered obstruction of justice because it was undertaken with the advice of counsel. Even if Clements' counsel advised him to enter into the transaction itself, this advice cannot protect him from the consequences of his decision to mislead the IRS and hide the sale of the stock until after the transaction was final.

with a range of forty-one to fifty-one months imprisonment. The district court then imposed the maximum sentence under this range, fifty-one months.[21] Clements' secret sale of his stock in Capitol Lake Properties, Inc., was essentially the same type of conduct for which he had been convicted. We find that the upward departure imposed by the district court was not unreasonable. *See George*, 911 F.2d at 1030-31 (affirming upward departure to fifty months sentence from Guidelines range of fifteen to twenty months because of obstruction of justice following conviction); *United States v. Sanchez*, 893 F.2d 679, 681-82 (5th Cir. 1990) (affirming upward departure to thirty-six months sentence from Guidelines range of eighteen to twenty-four months because of continued criminal conduct while released on bond).

VI

For the foregoing reasons, we AFFIRM both the conviction and sentence.

---

The maximum statutory term of imprisonment for each count is five years. 26 U.S.C. § 7201; 18 U.S.C. § 1001.