UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Wilson HUMBER, Defendant-Appellant.

No. 00-11054.

United States Court of Appeals,

Eleventh Circuit.

July 5, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 99-00252-CR-BU-W), H. Dean Buttram, Jr., Judge.

Before EDMONDSON, HILL and GIBSON[*], Circuit Judges.

HILL, Circuit Judge:

This appeal presents a simple question of first impression in this circuit and apparently all others under the sentencing guidelines:  can a defendant who pleads guilty to eighty-three counts of bank fraud, money laundering, forfeiture and tax evasion, involving more than $18,000,000 in embezzled funds and lost interest, receive a two-point enhancement to his base offense level under USSG § 2F1.1(b)(2)(A), for the use of more than minimal planning to commit the fraudulent offense, and an additional two-point enhancement under USSG § 2F1.1(b)(5)(C)[1], for the use of sophisticated means to commit the offense?  Based upon the following, we conclude that the two sections are to be applied cumulatively, not in the alternative.  We affirm the decision of the district court.

I.

The pertinent facts are not in dispute.  Citizens Bank of Fayette, Alabama (Bank) is a one-branch bank owned by members of the Robertson family.  Hired as a Bank teller in 1971, appellant Robert Humber, a Robertson family childhood friend and classmate, was a trusted employee of the Bank.[2] By 1992, Humber had worked his way up to Bank vice-president and cashier, responsible for supervising tellers, maintaining the vault, and keeping the general ledger.  As part of his bookkeeping responsibilities, he provided daily

---

[*]Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]We apply the sentencing guidelines manual in effect on the date that the defendant is sentenced. USSG § 1B.11(a).  This defendant was sentenced on February 17, 2000.  All references included herein, therefore, are to the sentencing guidelines manual dated November 1, 1998.

[2]Humber's wife of twenty years, JoAnn Humber, was secretary to the Bank president.

reconciliations of the Bank's accounts and monthly accounting statements to the Bank's directors.

In the mid-1990's, Humber lost $200,000 of his personal retirement benefits in the stock market. In an attempt to recoup these monies, he developed an embezzlement scheme that would last more than seven years and take auditors eight months to unravel. Humber's criminal conduct involved multiple inner account transfers on the Bank's books and fraudulent wire transfers of the Bank's Federal Reserve account to his personal account at AmSouth Bank in Birmingham.[3] Bank officials did not suspect any wrongdoing until 1999, when Humber made several inquiries about the timing of a surprise Bank audit by external auditors.

Although the full extent of Humber's fraud may never be known, the following is a brief overview: Humber made 3,000 to 5,000 fraudulent entries in more than six accounts within the Bank, not counting personal accounts he controlled without the Bank; he made 136 wire transfers directly from the Federal Reserve to personal accounts he controlled without the Bank; he prepared false cashier's checks; he made up false and carefully selected institutional payees that typically dealt with large dollar amounts on a regular basis; on the last day of every month since 1994, Humber prepared numerous false "cash letters," inflating the Bank's balance at the Federal Reserve, with offsetting false entries to conceal the scheme from the Bank; he falsified other Bank reconciliations; he made approximately $800,000 in false entries in the Bank's demand deposit accounts and it's general ledger; through 271 false entries, Humber borrowed more than $8.1 million in federal funds from SouthTrust Bank in Birmingham, using a separate account and separate customer number, with directions that statements be mailed directly to his attention; he made false entries in the Bank's customer certificate of deposit accounts; Humber purchased federal funds at corresponding banks with no concomitant record in the Bank's records other than "off balance sheet items;" he changed the Bank's computer password with the Federal Reserve, allowing himself the sole use and access of the Federal Reserve account and its computer line to generate transactions; he destroyed all Bank records involving wire transfers with the Federal Reserve; he lied to bank officials about the federal fund transactions; and, in order to facilitate the longevity of his scheme, Humber personally coordinated the yearly audits of Bank books with the Bank's outside auditors.

Humber pled guilty to the eighty-three counts of bank fraud [18 U.S.C. § 1344], money laundering [18 U.S.C. § 1957], forfeiture [18 U.S.C. §§ 982(a)(1), (2) ], and tax evasion [26 U.S.C. § 7206(1) ] as set

---

[3]In the beginning, these wire transfers were between $20,000 and $30,000. By the end, the last wire transfer totaled $3,110,000.

forth in the superseding indictment. The district court sentenced Humber to 108 months' imprisonment, four years of supervised release and restitution in the amount of $12,948,697.20.

## II.

Humber filed two objections to the Presentence Investigation Report (PSI) prepared by the probation office. The first objection was sustained.[4] The second objection is the subject of this appeal: whether the two-level enhancement under USSG § 2F1.1(b)(2)(A), for more than minimal planning, and the two-level enhancement under USSG § 2F1.1(b)(5)(C), for using sophisticated means to commit the offense, may be imposed cumulatively, or, must they be imposed in the alternative, as the use of sophisticated means encompasses the same conduct as more than minimal planning, and their cumulative imposition results in double counting for the same conduct?

## III.

This court reviews the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts *de novo. United States v. Jamieson,* 202 F.3d 1293 (11th Cir.2000) (citations omitted). Whether the cumulative enhancement of a sentence under two separate guideline provisions constitutes impermissible double counting presents a question of law reviewed *de novo. See United States v. Stevenson,* 68 F.3d 1292, 1294 (11th Cir.1995).

## IV.

Humber does not contest testimony provided by Bank witnesses concerning the nature, extent, scope or complexity of his embezzlement scheme or fraudulent transactions. He agrees with the facts as presented by the Bank. Humber admits that his fraudulent conduct constitutes the use of sophisticated means for purposes of USSG § 2F1.1(b)(5)(C).[5] He claims, however, that the fraudulent conduct contemplated by the more than minimal planning offense characteristic of USSG § 2F1.1(b)(2)(A) is subsumed within the sophisticated means offense characteristic of USSG § 2F1.1(b)(5)(C) and that he should not be charged double for the same conduct.

The government contends that the district court properly applied USSG §§ 2F1.1(b)(2)(A) and

---

[4]The district court agreed with Humber's objection to a two-point enhancement for obstruction of justice under USSG § 3C1.1, that his conduct did not warrant the adjustment as he had been credited with acceptance of responsibility.

[5]Interestingly, Humber does not contest the government's contention that had he taken so much as one day off from the Bank during the time of the fraudulent scheme charged, his activities would have been discovered.

(b)(5)(C) cumulatively. It claims that Humber's activities involved more planning than is typical of the offense of bank fraud in its simplest form, yet that the conduct was implemented by the use of sophisticated means, separate and distinct from, to be applied in addition to, more than minimal planning. The government argues that the simultaneous application of USSG §§ 2F1.1(b)(2)(A) and (b)(5)(C) is permitted because the guidelines have not specifically prohibited their cumulative application, nor has the United States Sentencing Commission (Commission) expressed any intent to the contrary, and because the two provisions address conceptually different sentencing considerations. *See Stevenson,* 68 F.3d at 1294.

V.

Section 2F1.1(b)(2)(A), found in Part F (Offenses Involving Fraud or Deceit) of the sentencing guidelines, provides for a two-level increase of a defendant's base offense level "[i]f the offense involved ... more than minimal planning." USSG § 2F1.1(b)(2)(A). The Commentary to subsection (b)(2)(A) provides that " '[m]ore than minimal planning' ... is defined in the Commentary to § 1B1.1 (Application Instructions" at note 1(f)). *See* USSG § 2F1.1, comment, (n.2).

The Commentary to § 1B1.1 at note 1(f) reads in pertinent part as follows:

"More than minimal planning" means more planning than is typical for commission of the offense [of fraud] in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

* * *

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase4 orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accomplished by false entries.

USSG § 1B1.1, comment. (n.1(f)).

Reading further in the Commentary to USSG § 1B1.1 at note 4:

The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used.

USSG § 1B1.1, comment. (n.4).

In *United States v. Daniels,* 148 F.3d 1260 (11th Cir.1998), the defendant warranted the more-than-minimal-planning enhancement under USSG § 2F1.1(b)(2)(A) when his embezzlement of funds

from a health plan occurred over a period of nearly five years and constituted "repeated acts over a period of time" that were not merely opportune. *Id.* at 1261; *see* USSG § 1B1.1, comment. (n.1(f)). The *Daniels* court found that the defendant's submission of falsified and forged letters to the bank were "significant affirmative steps ... taken to conceal the offense." *Id.* In addition the court found that when the defendant committed two acts of bank fraud, it may have justified the enhancement in and of itself. *Id.; citing United States v. Bush,* 126 F.3d 1298, 1300 (11th Cir.1997)("we are hardpressed to imagine a scenario in which 'obtaining even one fraudulent loan would not require more than minimal planning' ") (citation omitted).

Section 2F1.1(b)(5)(C) was added to Part F of the sentencing guidelines by Amendment 577, effective November 1, 1998, reflecting an overall intent by the Sentencing Commission to impose harsher sentences for white-collar criminals, particularly at higher levels of loss. *See* Elkan Abramowitz, 4 No. 7 Mealey's Litig. Rep.: Ins. Fraud 20 (1997). It provides for a two-level increase of a defendant's base offense level "[i]f ... the offense otherwise involved sophisticated means...." USSG § 2F1.1(b)(5)(C). It also added a "floor" to a defendant's base offense level: "[i]f the resulting offense level is less than 12, increase to level 12." *Id.*

The Commentary to § 2F1.1(b)(5)(C) at note 15 reads in pertinent part as follows:

For purposes of subsection (b)(5)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense ... Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts also ordinarily would indicate sophisticated means.

*The enhancement for sophisticated means under subsection (b)(5)(A) requires conduct that is significantly more complex or intricate than the conduct that may form the basis for an enhancement for more than minimal planning under subsection (b)(2)(A).*

If the conduct that forms the basis for an enhancement under subsection (b)(5) is the only conduct that forms the basis for an adjustment under § 3C1.1 (Obstruction of Justice), do not apply an adjustment under § 3C1.1.

USSG § 2F1.1(b)(5)(C), comment. (n.15) (emphasis added).

At this writing, the issue of whether USSG §§ 2F1.1(b)(2)(A) and (b)(5)(C) can be applied cumulatively to enhance a defendant's sentence has not been considered by any appellate court.[6] The issue

---

[6] By way of dicta, there is some indication in two appellate tax cases, that the cumulative application of USSG §§ 2F1.1(b)(2)(A) and 2T1.1(b)(2), involving the use of sophisticated means during the commission of the crime of tax evasion, is permissible. *See United States v. Clements,* 73 F.3d 1330, 1340-41 (5th Cir.1996); *United States v. Madoch,* 108 F.3d 761, 765-66 (7th Cir.1997).

In support that the two sections are to be applied cumulatively, and not in the alternative, secondary treatise authority states that "Sentencing Commission data suggests that the sophisticated-means enhancement was not applied as frequently as the

was, however, recently addressed by an Ohio district court in *United States v. Wiant* (S.D.Ohio Jan.5, 2001), a case involving extensive fraud committed by upon the American Cancer Society of Columbus by the defendant as its chief administrative officer. The superceding indictment charged that Wiant had created three separate schemes, perpetuated through five fictitious businesses, culminating in the transfer of $6.9 million in charity funds to an offshore Austrian bank account in Wiant's name. Wiant pled guilty to four-counts of mail fraud, bank fraud, money laundering and unauthorized use of an access device.

In his response to the PSI, Wiant objected to the sophisticated means enhancement under USSG § 2F1.1(b)(5)(C) on the basis that the more than minimal planning enhancement of USSG § 2F1.1(b)(2)(A) had already accounted for the complexity of his offense and to apply both would double count for the same offense. *Id.* at *4.

The district court, in a well-considered opinion by Judge Kinneary, disagreed, stating:

> In this case, the more than minimal planning enhancement is justified by the fact that Defendant executed acts of fraud repeatedly during his three-year tenure with the American Cancer Society. *The repetition of his fraudulent conduct is a separate issue from the complexity of his schemes.* In fact, most property offenses, regardless of their degree of complexity, involve a more than minimal planning enhancement. *See* USSG § 1B1.1, Comment. n.(f) [sic]. *This Court is convinced that a defendant's conduct which involves repeated acts of fraud, as well as especially intricate planning, warrants both the more than minimal planning enhancement and the sophisticated means enhancement. If the Sentencing Commission had intended otherwise, they would have provided that those enhancements are mutually exclusive. To the contrary, the Guidelines list the enhancements individually as specific characteristics which may apply to an offense involving fraud and deceit.*

*Id.*(emphasis added). With this said, Judge Kinneary applied the two enhancements cumulatively. *Id.*

We have a very similar factual setting in the appeal before us. Humber's crime against the Bank involved continuous acts of fraud over a seven year basis. Humber's crime against the Bank was of a particularly complex nature. It took external auditors eight months to unravel, and, the record reflects that the full extent of the crime may never be known.[7]

As stated, Application note 15 implies that enhancements for more than minimal planning and sophisticated means are intended to be mutually exclusive. *See* USSG § 2F1.1, comment. (n.15 at ¶ 3). In

---

more-than-minimal-planning enhancement of the fraud guideline. The more-than-minimal-planning enhancement is applied in about 76% of the cases. The sophisticated-means enhancement ... was applied in about 18% of the cases." Thomas W. Hutchinson *et al.,* Fed. Sent. L. & Prac. § 2T1.2 (2000 ed.).

[7]The PSI reflects that, based upon Humber's responses, no one may also ever know how or why this soft-spoken, mild-mannered man with no criminal history committed the offense and how he thought he would continue to successfully conceal the offense year after year. The probation officer can only speculate on his simple greed, and that of his spouse, as the motivating factor.

other words, we conclude that sophisticated means involves more than minimal planning. More than minimal planning, however, does not necessarily involve sophisticated means. A defendant who uses sophisticated means will always receive, in addition, an enhancement for more than minimal planning. *See* Thomas W. Hutchinson, Fed. Sent. L. & Prac. § 2F1.1(2000 ed.).[8]

VI.

We conclude that USSG § 2F1.1(b)(2)(A) and USSG § 2F1.1(b)(5)(C) are to be applied cumulatively, and not in the alternative. The decision of the district court is AFFIRMED.

EDMONDSON, Circuit Judge, concurs in the result.

---

[8]While we are aware of the potential for overlap, caselaw in this circuit is clear that, in determining the intent of the Commission, we shall presume that the Commission intended to apply separate guideline sections cumulative unless specifically directed otherwise. *See Stevenson,* 68 F.3d at 1294-95. This is especially true when each guideline section in question, such as present in the case before us, concerns conceptually separate notions relating to sentencing. *Id.*