# United States Court of Appeals
## for the Fifth Circuit

--------

No. 23-30726

--------

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Avery A. Goins,

*Defendant—Appellant*.

--------------------------------

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CR-185-1

--------------------------------

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Avery A. Goins pled guilty to wire and bankruptcy fraud in violation of 18 U.S.C. §§ 1343 and 157(1)-(2), respectively, and was sentenced to sixty months of imprisonment with three years of supervised release. On appeal, Goins argues that the district court clearly erred by applying a two-level enhancement under United States Sentencing Guideline § 2B1.1(b)(10)(C)

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

for using sophisticated means. For the reasons set forth below, we AFFIRM.

## I.   Background

Goins is the owner and sole employee of a car dealership, 2nd Chance Auto, LLC, which he used to perpetuate the wire and bankruptcy fraud scheme. The wire fraud scheme worked as follows. Goins opened two bank accounts under 2nd Chance Auto, LLC's name—one with Regions Bank and the other with JPMorgan Chase. He then applied for a merchant account with Elavon, Inc., a credit card processing company, under 2nd Chance Auto, LLC's name.[1] The Elavon account was tied to 2nd Chance Auto, LLC's Regions Bank account. Then, over the course of about a month, Goins conducted over thirty unauthorized credit card transactions at 2nd Chance Auto, LLC, totaling $138,800.[2] To prevent the recovery of the funds through chargebacks, Goins would then transfer funds from the Regions Bank account into the JPMorgan Chase account linked to 2nd Chance Auto, LLC. To further conceal the fraud, Goins also spoke with representatives of Elavon by phone regarding the chargebacks to his account and claimed 2nd Chance Auto, LLC had made sales in exchange for each of the credit card charges.

---

[1] A credit card processing company, like Elavon, operates as an intermediary between a merchant and the financial institution that issues a customer's credit card. When a customer makes a credit card purchase, the credit card data is relayed to the credit card processor—in this case, Elavon—which then sends this data to the financial institution to determine if the customer has sufficient credit for the purchase. The financial institution then transmits the approval to the processor, which authorizes the purchase and deposits the funds in the merchant's account.

[2] For instance, Goins, for one such transaction, charged $4,200 to a Florida resident's credit card for the purported sale of a vehicle even though Goins did not have authorization from the resident, nor did he sell him a vehicle.

Ultimately, Elavon suffered a loss of approximately $40,700 before closing Goins' merchant account.

Regions Bank also suffered a $50,000 loss from Goins' misconduct. Soon after Goins conducted the unauthorized credit card transactions at 2nd Chance Auto, LLC, he deposited two counterfeit checks totaling $160,000 into the Regions Bank account for 2nd Chance Auto, LLC. These checks purportedly represented the proceeds from the sale of over ten vehicles to a Canadian purchaser. Goins withdrew the money from the account the next day, before Regions Bank realized the checks were counterfeit.

A few months later, Goins filed for Chapter 7 bankruptcy. He claimed that he filed for bankruptcy because the alleged Canadian buyers wrote him a worthless check, and that the vehicles could not be recovered because they were already in Canada. During Goins' bankruptcy proceedings, he did not disclose his debts owed to Elavon and Regions Bank. Goins also failed to disclose the assets in the name of 2nd Chance Auto, LLC contained in the JPMorgan Chase account. He also falsely claimed that 2nd Chance Auto, LLC had approximately $71,000 in monthly expenses, making it appear that he was eligible for a Chapter 7 discharge. Additionally, Goins testified that he had not filed tax returns for 2017 or 2018, but that he was in the process of doing so. The United States Trustee never received any documentation regarding the sale of the vehicles to the Canadian buyers or Goins' tax returns. If Goins' bankruptcy claim had been successful, he would have been relieved of $457,021.87.

Goins pleaded guilty, pursuant to a written plea agreement, to one count of wire fraud and one count of bankruptcy fraud. As calculated in the presentence investigation report, Goins' total offense level was 26, which included a two-level enhancement pursuant to § 2B1.1(b)(10)(C) because "the offense involved sophisticated means and the defendant intentionally

engaged in or caused the conduct constituting sophisticated means." Over Goins' objection to the application of § 2B1.1(b)(10)(C), the district court applied the enhancement. The district court explained that § 2B1.1(b)(10)(C) applies to "complex, intrinsic efforts to commit or conceal a crime. Hiding assets or transactions or both through the use of entities, shell corporations or corporate shell corporations or offshore accounts fits; but also [the] intent to deceive somebody . . . basically that it makes the offense more difficult to be detected. And which I find in this case [the offense] meets the sophisticated means" enhancement. Goins renewed his objection. He was sentenced to sixty months of imprisonment and three years of supervised release. Goins filed a timely notice of appeal.

## II.    Jurisdiction & Standard of Review

The district court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

"We review the district court's factual finding that [a defendant] used sophisticated means to impede discovery of his offense for clear error." *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996). "We will not find a district court's ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted).

## III.    Discussion

Goins challenges the district court's application of the sophisticated means enhancement under § 2B1.1(b)(10)(C).[3] He contends that he did not

_____

[3] The Sentencing Guidelines recommend a two-level increase if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S. Sent'g Guidelines Manual § 2B1.1(b)(10)(C). The commentary defines "sophisticated means" as

use shell corporations, offshore accounts, or other methods to make detection of his fraud more difficult. Instead, he maintains that his conduct is similar to the defendant's conduct in *United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013), where we held that the district court clearly erred by applying the enhancement. 726 F.3d 684, 695 (5th Cir. 2013). We disagree.

This is not a case like *Valdez*, where the defendant simply "took money directly deposited" into his account and moved the funds into another account under his name. *Id.* ("[T]here is no indication that this open and transparent direct deposit and movement of funds involved sophisticated means or could have made it more difficult for his offense of health care fraud to be detected."). Rather, the means Goins used to perpetuate the fraud, when considered together, were more advanced. *See United States v. Miller*, 906 F.3d 373, 380 (5th Cir. 2018) ("We have affirmed the application of the sophisticated means enhancement in cases involving some method that made it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated." (internal quotation marks and citation omitted)).

Goins used his car dealership to lend the appearance of legitimacy to the unauthorized credit card transactions and bankruptcy filing. Not only did Goins mislead Evalon by representing that the credit card transactions were for the sale of vehicles and thus dispute the chargebacks, but Goins also thwarted any recovery of the funds through chargebacks as well when he

---

"especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* at cmt. n.9(B). The commentary further explains that "in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means" and that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts [ ] ordinarily indicates sophisticated means." *Id.*

moved the funds to 2nd Chance Auto, LLC's JPMorgan Chase account. By doubling down on the legitimacy of the charges, Goins impeded discovery of his fraud. He even went as far as depositing two counterfeit checks worth $160,000 for purported car sales into the Regions Bank account for 2nd Chance Auto, LLC to further enhance the legitimacy of the scheme. Goins continued to use the car dealership to perpetuate the bankruptcy fraud as well. He misrepresented his impetus for filing bankruptcy, claiming it was because the alleged Canadian buyers wrote him a worthless check, and further misrepresented 2nd Chance Auto, LLC's monthly expenses, making it appear that he was eligible for a Chapter 7 discharge. 2nd Chance Auto, LLC's two bank accounts also facilitated his failure to disclose the assets in the JPMorgan Chase account.

This conduct, viewed in its entirety, is similar to other acts that we have held support the enhancement. *See United States v. Wright*, 496 F.3d 371, 378–79 (5th Cir. 2007) (upholding enhancement where defendant used fraudulent cashier's checks to help borrowers falsely appear creditworthy); *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996) (affirming enhancement where defendant used cashier's checks and a separate bank account that made it more difficult for the Government to detect tax evasion); *United States v. Malfitano*, 690 F. App'x 218, 219 (5th Cir. 2017) (per curiam) (affirming enhancement where, although the defendant provided his true identity, "he attempted to avoid detection and to conceal the fraudulent nature of the transactions at issue, and he attempted to legitimize the proceeds distributed to him through his company"). Accordingly, it was not clearly erroneous for the district court to conclude that Goins' overall conduct warranted the sophisticated means enhancement.

## IV.    Conclusion

No. 23-30726

For the reasons set forth above, we AFFIRM.