REVISED, August 4, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-30570
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN E. MILTON, III, also known as Boo Milton,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____
July 21, 1998

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This appeal presents, once again, application of our plain error standard of review for a defendant's failure at sentencing to object to lack of notice, when the district court utilizes a basis for upward departure not advanced pre-sentencing by either the presentence report, a submission by the Government, or the district court. Having pleaded guilty to a drug trafficking conspiracy, John E. Milton, III, challenges his sentence, contending that the district court erred, *inter alia*, (1) by enhancing his sentence for obstruction of justice for inducing a co-conspirator to sign a false affidavit; (2) by not giving notice that it would consider

misrepresentation of assets as a basis for an upward departure; and (3) by departing upward on that basis. We **AFFIRM**.

I.

Between January 1993 and August 1995, Milton participated in a conspiracy to possess with intent to distribute cocaine. More than 88 kilograms of powder cocaine and 6.9 kilograms of cocaine base were transported from Houston, Texas, to Baton Rouge, Louisiana, where it was sold.

In mid-March 1996, Milton and three others were indicted for that conspiracy, which violated 21 U.S.C. § 846; Milton, also for three counts of cocaine distribution. A warrant was then issued for Milton's arrest.

Although Milton knew he had been indicted, he did not surrender until mid-August. Milton pleaded guilty in October 1996 to the conspiracy count. Pursuant to his plea agreement, the other counts were dismissed.

The presentence report (PSR) identified factors warranting an upward departure from the offense level, including Milton's obstruction of justice by hiring lawyers to approach three of Milton's co-conspirators to sign false affidavits exonerating him. Two co-conspirators did so. At a hearing in March 1997, the district court gave notice of its intent to depart upward, as detailed below.

At sentencing in April 1997, the district court found that Milton had asked a co-conspirator to sign a false affidavit exonerating Milton, and that this was an obstruction of justice

2

which justified the PSR's recommended two-point enhancement under U.S.S.G. § 3C1.1, bringing the offense level to 42. The court next imposed a one-point upward departure, because it found that Milton had obstructed justice by failing, during the presentence investigation, to provide sufficient financial information to the probation officer. But, the court reconsidered its earlier denial of the Government's U.S.S.G. § 5K1.1 motion for a two-level downward departure, and granted one level. Based on the final offense level of 42 and criminal history category of I, the imprisonment range was 360 months to life. Milton was sentenced to 600 months (50 years) imprisonment and fined $250,000.

In addition, the court stated that, if its upward departure was reversed on appeal, then in the alternative, it would have imposed a one-level upward departure for any of the three instances in which Milton solicited others to sign the false affidavits. In the further alternative, it stated that it would raise Milton's criminal history category one level because of his use of "clone" cellular telephones and his continuing drug dealing with the knowledge he had been indicted.

## II.

Milton contests (1) the enhancement for obstruction of justice for inducing a co-conspirator to sign a false affidavit exonerating Milton; (2) the lack of notice that misrepresentation of assets would be considered as a basis for an upward departure; (3) such departure for obstruction of justice based on misrepresentation; and (4) the alternative sentencing bases, claimed to be

3

impermissible, lacking in notice, and unwarranted.  Because we do not find reversible error as to the original sentence, we do not reach the alternative.  (Milton also preserves, but in the light of well-established authority does not argue, his sentencing disparity issue concerning cocaine base and powder cocaine.)

A.

The obstruction of justice finding concerning the false affidavit is reviewed for clear error. *United States v. Paden*, 908 F.2d 1229, 1236 (5th Cir. 1990), *cert. denied*, 498 U.S. 1039 (1991).  Along this line, the pertinent Guidelines section, U.S.S.G. § 3C1.1, provides:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

And, § 3C1.1 comment 3 states, in pertinent part:

> The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
>
>> (a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
>>
>> (b) committing, suborning, or attempting to suborn perjury;
>>
>> (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding....

Finding that Milton had induced co-conspirator Robertson to sign a false affidavit exonerating Milton, the court applied the

4

enhancement. Milton claims there was no evidence of any *willful* obstruction of justice: he did not threaten Robertson, and the affidavit was never used.

The PSR found Milton to be a manager or supervisor in a conspiracy involving at least five participants. According to the PSR, attorneys hired by Milton asked three of his co-conspirators to sign affidavits exonerating Milton from the conspiracy. Robertson and one other co-conspirator signed such affidavits provided by the attorneys.

At Milton's sentencing hearing, Robertson testified that, after his arrest in June 1995, and prior to Milton's being indicted, he told Milton, during a telephone conversation, that another co-conspirator was cooperating with the Government. In response, Milton told Robertson that attorneys would come to the prison with an affidavit for him to sign, which would state that he and Milton were never involved in trafficking drugs. The attorneys brought the affidavit to Robertson, told him that Milton wanted him to sign it, and Robertson complied. Robertson later testified falsely at his own trial concerning his involvement with Milton in the drug conspiracy. During Milton's sentencing hearing, when Robertson was asked why he testified falsely and signed a false affidavit, he replied "to protect myself and to protect Milton".

As evidenced by Milton's guilty plea, he knew that, when his attorney approached Robertson, he (Milton) was involved in a drug conspiracy; therefore, Milton knew he was asking one of his co-conspirators to sign a false affidavit. Milton's contention that

5

the district court failed to give proper consideration to the fact that the affidavit was not used by Milton is quite disingenuous; if Milton's case had gone to trial, the affidavit could have been used to impeach Robertson, had he chosen to cooperate with the Government and testify against Milton.

It was not clearly erroneous for the district court to find, based on the above evidence, that Milton was attempting to obstruct justice. *Cf. **United States v. Bethley***, 973 F.2d 396, 402 (5th Cir. 1992) (upholding § 3C1.1 obstruction of justice enhancement in part because a defendant contacted his associate on at least five occasions to ask her to sign a false affidavit exonerating him, stating "I would do it for you"), *cert. denied,* 507 U.S. 935 (1993).

B.

Regarding whether the district court gave notice it would consider concealment of assets as a basis for upward departure, we must first determine the proper standard of review. As discussed *infra*, it is for plain error.

Federal Rule of Criminal Procedure 32(c)(1) provides: "At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence". Our court interpreted this Rule to require a court to notify counsel of its intent to depart upward *and* identify the basis for such possible departure. **United States v. Otero**, 868 F.2d 1412 (5th Cir. 1989). The Supreme Court provided

6

further guidance in **Burns v. United States**, 501 U.S. 129, 138 (1991):

> We hold that before a district court can depart upward *on a ground not identified as a ground for upward departure either in the [PSR] or in a prehearing submission by the Government*, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. *This notice must specifically identify the ground on which the district court is contemplating an upward departure.*

(Emphasis added.) *See also* **United States v. Pankhurst**, 118 F.3d 345, 357 (5th Cir.) ("Under **Burns**, Rule 32 requires that, before a district court may depart upward, the defendant must have notice, either in the PSR (see Rule 32(b)(4)(B)), or in a pre-hearing submission by the Government, or from the court."), *cert. denied,* 118 S. Ct. 630 (1997).

The holding in **Burns** was based on the concern that

> parties will address possible *sua sponte* departures in a random and wasteful way by trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative. At worst, and more likely, the parties will not even try to anticipate such a development; where neither the [PSR] nor the attorney for the Government has suggested a ground for upward departure, defense counsel might be reluctant to suggest such a possibility to the district court, even for the purpose of rebutting it. In every case in which the parties fail to anticipate an unannounced and uninvited departure by the district court, a critical sentencing determination will go untested by the adversarial process contemplated by Rule 32 and the Guidelines.

501 U.S. at 137.

The PSR, in assessing Milton's ability to pay a fine, noted:

7

> Milton's financial statement is not reflective of the type of income associated with major amounts of cocaine distribution. Information from agents and those associated with him indicate that many of the houses used in the conspiracy were placed in the name of other individuals. This information has not been verified. A final determination of his worth cannot be made.

But, this section pertained only to Milton's ability to pay a fine, and did not suggest related collateral matters as a basis for an upward departure. In fact, the PSR discussed an upward departure only with respect to the false affidavits and the use of "clone" cellular telephones while a fugitive from justice.

At the March 1997 hearing, the district court gave the following notice:

> This is what the court is going to do in this case: *the court is going to give notice of the court's intent to depart upward in this case on the basis of [U.S.S.G. § 2D1.1, concerning the base offense level determination for, inter alia, drug trafficking conspiracies]* and specifically of the court's intent that all the cocaine involved in this case, both 88.337 kilos of powdered cocaine and 6.9 kilos of base cocaine, be used in connection with any sentence that might be imposed in this case. And then specifically, so that everybody will understand, that if the court uses 1.15 kilos of base cocaine, that would give the defendant an offense level of 38 in this case whether or not there is sufficient other quantity of cocaine involved in this case such that the court should depart upward because of the amount of cocaine involved in this case under [U.S.S.G § 2D1.1] and specifically Note 17 thereof, which provides, "In an extraordinary case, an upward departure above offense level of 38 on the basis of drug quantity may be warranted.
> ...

The court also advises counsel for all parties of the court's *intent to accept evidence on the issue of obstruction of justice on all issues set forth in the [PSR]* and in addition, *obstruction of justice on whether or not representations made to the court by the defendant regarding his financial situation is true and correct, and in particularity whether or not the defendant has properly disclosed all vehicles which either he purchased for himself or others, including but not limited to, Rolls Royces, Porches, Mercedes, and Suburbans, or other such type vehicles.*

The purpose of that inquiry is to determine whether or not, under the facts of this case, a fine should be imposed in accordance with [U.S.S.G. § 5E1.2, application note 6], which provides that the existence of income or assets that the defendant failed to disclose may justify a larger fine than that which otherwise would be warranted under [§ 5E1.2]. The court may base its conclusion as to this factor on information revealing significant unexplained expenditures by the defendant, or unexplained possession of assets that do not comport with the defendant's reported income. *If the court concludes that the defendant willfully misrepresented all [or] part of his income or assets, it may increase the offense level and the resulting sentence in accordance with Chapter three, Part C obstruction.*

...

And finally, ... I want the parties to strongly either argue this or brief this issue[:] whether or not there can be and has been acceptance of responsibility because of the defendant's actions in continuing his drug trade while under indictment and having knowledge thereof.

And also whether or not those actions and the amount of drugs involved in the activity involved in this case is such that the court should consider whether or not to depart upward because the defendant's prior criminal history is not adequately reflected in his prior and current conduct.

9

> *And I think that satisfies whatever notices I need to give to everybody*. And I think, considering the magnitude of this case and the fact that this defendant -- *the range, depending on what the offense level could be, even facing a life sentence*, would be better served.

(Emphasis added.)

As quoted above, the district court gave notice of its intent to depart upward. But, as for its statement that it would accept evidence of "obstruction of justice on whether or not representations made to the court by the defendant regarding his financial situation is true and correct, and in particularity whether or not the defendant has properly disclosed all vehicles which either he purchased for himself or others", it went on to state only that, "[i]f the court concludes that the defendant willfully misrepresented all [or] part of his income or assets, it may increase the offense level and the resulting sentence in accordance with Chapter three, Part C obstruction".

As Milton correctly points out, neither of these statements about assets misrepresentation is expressly named as a possible basis for an *upward departure*; rather, they appear to pertain to the calculation of a *fine* and to an *enhancement* under § 3C1.1. The upward departure notification appears to have been limited to § 2D1.1, concerning the offense level for crimes involving drugs.

### 1.

At the April sentencing hearing, when the court departed upward because of the assets misrepresentation, Milton's counsel did not object to the lack of notice of this possible departure-

basis.  At oral argument on appeal, Milton's counsel (who did not represent Milton at sentencing) noted that **Burns** made no mention of an objection, and stated this suggests one is not required when *it is the court* that fails to give notice.

**Burns** did not address this question.  Our court has: if no objection to lack of notice is made in district court, we review only for plain error.  *See* **United States v. Hawkins**, 87 F.3d 722, 730 (5th Cir.) (holding that defendant's contention, that the district court's basis for upward departure is ambiguous and not stated in the PSR, is reviewed only for plain error because defendant failed at sentencing to object to lack of notice), *cert. denied,* 117 S. Ct. 408 (1996); *see also* **United States v. Coenen**, 135 F.3d 938, 940-41 (5th Cir. 1998) (determining, for non-upward departure sentencing imposition, whether defendant sufficiently objected to lack of notice before addressing whether notice required); **Pankhurst**, 118 F.3d at 356-57 (determining, for downward departure, whether Government sufficiently objected to lack of notice before addressing whether notice required).

Milton did not object, move for a continuance, or in any way indicate that the lack of notice of the basis for the upward departure had prejudiced him at the sentencing hearing. Accordingly, we review his lack-of-notice contention only for plain error.[*]

---

[*]     The dissent appears to imply that it is improper for us to apply plain error *sua sponte*, in that the Government did not contend that Milton's failure to object mandated such a standard of review.  But, it is more than well-established that

11

2.

As discussed in **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995), we will reverse for plain error if (1) there is error, (2) that is clear or obvious, and (3) affecting substantial rights. And, even then, we have discretion to correct such errors; generally, we will do so only if they "seriously affect the fairness, integrity, or public reputation of judicial proceedings". *Id*. at 164 (quoting **United States v. Atkinson**, 297 U.S. 157, 160 (1936)). *See* **Hawkins**, 87 F.3d at 730.

While the district court should have "specifically identif[ied] the ground on which [it was] contemplating an upward departure", **Burns**, 501 U.S. at 138-39, Milton's counsel was not placed in the position of "trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative". *Id.* at 137. The purpose behind notice of upward departure is to give effect to the Rule 32 requirement that the parties be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence". FED. R. CRIM. P. 32(a)(1);

> ... no party has the power to control our standard of review. A reviewing court may reject both parties' approach to the standard. If neither party suggests the appropriate standard, the reviewing court *must* determine the proper standard on its own....

**United States v. Vontsteen**, 950 F.2d 1086, 1091 (5th Cir.) (en banc) (citation omitted), *cert. denied*, 505 U.S. 1223 (1992) *see also* **United States v. Pierre**, 958 F.2d 1304, 1311 n.1 (5th Cir. 1992) (en banc).

12

***Burns***, 501 U.S. at 135. Notice of upward departure should be sufficient to satisfy "Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences". ***Id.*** at 137; ***Coenen***, 135 F.3d at 943.

There was no reversible plain error. The district court provided notice of the "legal [upward departure] and factual [misrepresentation of assets] issues" upon which it ultimately based its departure. Therefore, contrary to his assertions on appeal, and for plain error purposes, Milton's counsel was sufficiently on notice to discuss when and how upward departures are permitted, as well as the specific facts concerning the assets-misrepresentation.

C.

Regarding that departure, the factual findings are reviewed for clear error; the decision to depart, for abuse of discretion. *E.g.,* ***United States v. Ismoila***, 100 F.3d 380, 397 (5th Cir. 1996). "We will affirm a departure from the Sentencing Guidelines if it is based on 'acceptable reasons' and the degree of departure is 'reasonable'." ***United States v. Clements***, 73 F.3d 1330, 1341 (5th Cir. 1996) (citing ***United States v. Velasquez-Mercado***, 872 F.2d 632, 637 (5th Cir.), *cert. denied*, 493 U.S. 866 (1989)).

Under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, a court may depart from the Guidelines when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a

13

sentence different from that described". A court may make a departure, even when the factor is already taken into account elsewhere in the Guidelines, "only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense". U.S.S.G. § 5K2.0.

Our court has recognized that multiple acts of obstruction of justice may warrant an upward departure. *E.g.*, **Ismoila**, 100 F.3d at 397; **Clements**, 73 F.3d at 1342. Again, U.S.S.G. § 3C1.1 allows an enhancement "[i]f the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense". (Emphasis added.) An example of the type of conduct to which § 3C1.1 applies is "providing *materially* false information to a probation officer in respect to a presentence or other investigation for the court". (Emphasis added.) U.S.S.G. § 3C1.1 cmt. 3(h).

The district court departed upward one level because Milton "failed to provide accurate financial information to the probation officer during the presentence investigation". Milton contends that such undisclosed assets were never shown to have been owned by him, and, therefore, were not material; and, in the alternative, that there was no proof of willfulness in his failure to provide the information.

At the sentencing hearing, co-conspirator Fisher testified that Milton told him to retrieve Milton's Porsche from a woman in Baton Rouge and drive it to Houston. Fisher was arrested en route

14

to Houston, and the Porsche was seized by the Government. Milton had told Fisher that he paid $25,000 for the Porsche. Fisher also testified that he was present in Houston in 1996 when Milton purchased a BMW for a female drug-trafficking associate, in lieu of child support payments.

Fisher testified that he had seen Milton purchase diamond earrings and a marquis diamond ring. And, when Fisher met with Milton in Houston, Milton was staying at expensive hotels such as the Hyatt Regency.

The drug-trafficking conspiracy to which Milton pleaded guilty involved almost 100 kilograms of cocaine. Robertson, who had been receiving cocaine from Milton, testified that he (Robertson) was making $5,000 to $10,000 profit per kilogram sold. Robertson stated that he had made approximately $250,000 in the course of the conspiracy, and had approximately $100,000 at the time of his arrest.

On the other hand, Milton did not report significant assets to the probation officer, reporting owning only a $5,000 life insurance policy, a Rolex watch, and two handguns. The total of his reported assets was $12,700. Milton did not disclose his interest in the Porsche, the BMW, or the marquis diamond ring.

Obviously, this information was material to the probation officer's determination of Milton's ability to pay a fine; as stated in the PSR, the officer concluded that "[a] final determination of [Milton's] worth cannot be made". *See* U.S.S.G. § 3C1.1, cmt. 5 ("'Material' ... information, as used in this

15

section, means ... information that, if believed, would tend to influence or affect the issue under determination."); *United States v. Dupre*, 117 F.3d 810, 825 (5th Cir. 1997) ("'A statement to a probation officer concerning one's financial resources will obviously affect the officer's determination of ability to pay.'") (quoting *United States v. Cusumano*, 943 F.2d 305, 316 (3d Cir. 1991), *cert. denied*, 502 U.S. 1036 (1992)), *cert. denied*, 118 S. Ct. 857 (1998).

Milton contends that the BMW was a gift to his girlfriend in lieu of child support, and therefore the asset is hers, not his. However, as Fisher and Robertson testified, it is not unusual for a drug trafficker to place property in the names of others in order to avoid seizure. At the very least, if Milton had mentioned these items, the probation officer would have been in a position to determine their true ownership and, therefore, better determine Milton's ability to pay a fine.

Moreover, the large amounts of cocaine sold in the course of the conspiracy, along with testimony that Milton was seen with large amounts of cash, justifies the probation officer's conclusion that "Milton's financial statement is not reflective of the type of income associated with major amounts of cocaine distribution". Also noteworthy is Fisher's testimony that, when Milton was informed that he had been indicted and told he (Milton) should consider fleeing to Mexico, Milton responded that he planned to make "enough money" and then turn himself in.

The district court noted all of the above evidence in finding that Milton had willfully obstructed justice by providing materially false information to the probation officer.  In the light of the above evidence, the court was not clearly erroneous in finding obstruction of justice, and did not abuse its discretion in upwardly departing one level.

III.

For the foregoing reasons, Milton's sentence is

*AFFIRMED.*

*DeMOSS, Circuit Judge, concurring in part, dissenting in part:*

*I concur with that part of the majority opinion that affirms the district court's imposition of a two-level enhancement for obstruction of justice pursuant to § 3C1.1.*

*I must respectfully dissent, however, from that part of the majority opinion that affirms the district court's imposition of a one-level departure, which was also imposed for obstruction of justice. I agree with the majority that **Burns v. United States**, 501 U.S. 129, 137-38 (1991), requires a sentencing court to provide advance notice, specifically identifying the particular ground upon which it may grant an upward departure. I likewise agree with the majority's conclusion that the district court's notice in this case fell short of the requirements imposed by **Burns**.*

*I do not agree, however, with the majority's plain error analysis which sweeps the **Burns** defect under the rug. The government never raised Milton's failure to object as a ground justifying a heightened standard of review in this case. Thus, the majority is raising Milton's failure to object sua sponte, and then finding the sentencing court's unfortunate, but nonetheless plain, failure to adhere to the dictates of **Burns** excusable. Similarly, I cannot agree that the government adequately established any concealment on Milton's behalf. The Porsche relied upon by the government had apparently been seized prior to the time that Milton was interviewed by the probation officer. The balance of the government's evidence relies upon speculation concerning the status*

*of purported gifts and the fact that Milton, at one time or another, had considerable assets.*

*For the foregoing reasons, I would require that Milton's sentence be vacated and the cause remanded for resentencing.*