Revised February 17, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-10960**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**RUTH MUHAMMAD,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Northern District of Texas**

_____

January 15, 1999

Before GARWOOD, BARKSDALE, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this expedited appeal from an order committing federal prisoner Ruth Muhammad to hospitalization for treatment, pursuant to 18 U.S.C. § 4245, disposition having been by a magistrate judge, acting by written consent of the parties pursuant to 28 U.S.C. § 636(c)(1), at issue are: whether the magistrate judge lacked jurisdiction; the constitutionality of the preponderance of the evidence standard in § 4245(d); the sufficiency of the evidence; and whether the commitment violates Muhammad's right to free exercise of her religion under the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb. We **AFFIRM**.

Muhammad is serving a 63-month sentence in federal prison for robbing a bank in California in March 1997. (She had been released from a California state prison only a few days earlier.) On 3 March 1998, following her conviction on the bank robbery charge, Muhammad was examined by a Bureau of Prisons psychiatrist, who was of the opinion that Muhammad was then suffering from a mental disease or defect requiring custodial care and treatment in a suitable psychiatric hospital. Accordingly, on 4 March 1998, she was transferred to the Federal Medical Center, Carswell, in Fort Worth, Texas.

But, on 9 April, Muhammad refused admission to the Psychiatric Unit. Therefore, on 17 April, the Government filed a "Petition to Determine Present Mental Condition of an Imprisoned Person, ... and for Appointment of Counsel and Qualified Examiner Pursuant to 18 U.S.C. §§ 4245 and 4247", seeking Muhammad's commitment for psychiatric care and treatment. On 22 April, the district court entered an agreed order referring the appointment of counsel request to a magistrate judge.

A consent to the transfer of that request had been signed by both the Assistant United States Attorney and, on behalf of Muhammad, by an Assistant Federal Public Defender. On 23 April, the magistrate judge appointed the Federal Public Defender to represent Muhammad, and ordered him to file a report stating

whether Muhammad continued to object both to treatment and to being transferred to a suitable facility for that purpose.

On 11 June, a "Consent to Referral to Magistrate Judge ...", signed by the Assistant United States Attorney *and* by an Assistant Federal Public Defender (who also represents Muhammad on appeal) was filed. That Assistant Federal Public Defender, whose office is in California, had represented Muhammad there on the 1997 bank robbery charge, which resulted in her current imprisonment.

The consent stated that the Government, by and through the Assistant United States Attorney, and Muhammad, "by and through her attorney", stipulated and agreed that

> they consent to a hearing and determination to be had by United States Magistrate Judge ..., on the petition to determine present mental condition of an imprisoned person as requested by the petition filed by [the Government]. [The Government] and [Muhammad] consent that this case be transferred for all purposes to the United States Magistrate Judge ... for any determinations to be made in this case as requested by the petition of [the Government].

Pursuant to that consent, the district court ordered that the case be "reassigned and transferred to" the magistrate judge "for the conduct of all further proceedings and the entry of judgment".

On 12 August, the magistrate judge conducted a hearing on the Government's petition. The magistrate judge granted the petition and "committed [Muhammad] to the custody of the United States Attorney General for hospitalization for treatment in a suitable facility until [she] is no longer in need of such custody for care

- 3 -

or treatment or until the expiration of her sentence of imprisonment, whichever occurs earlier".

The next day, the magistrate judge denied Muhammad's motion for a stay of the commitment order pending appeal. Our court denied Muhammad's similar motion, but granted her motion to expedite her appeal.

## II.

Muhammad contends (1) that the magistrate judge lacked jurisdiction; (2) that the preponderance of the evidence standard in § 4245(d) is unconstitutional because due process instead requires clear and convincing evidence; (3) that the Government failed to establish that Muhammad posed a present danger to herself or others; and (4) that Muhammad's commitment violates her right to free exercise of her religion under the First Amendment and the Religious Freedom Restoration Act.[*]

## A.

Muhammad presents three bases in support of her claim that the magistrate judge lacked jurisdiction (authority) to enter the commitment order: (1) that Muhammad did not *personally consent* to the disposition of the petition by the magistrate judge; (2) that § 4245 commitment proceedings are not "civil" matters; and (3) that

---

[*] In September 1998, before Muhammad filed her appellate brief, the Government moved to dismiss this appeal on the ground that it is frivolous. The motion was carried with the case. As discussed *infra*, although the issues raised by Muhammad are without merit, they are *not* frivolous. The motion is **DENIED.**

Article III forbids even consensual reference of a § 4245 proceeding to a magistrate judge.

The statutory authority for *disposition* of this matter by the magistrate judge, rather than his preparing a report and recommendation for disposition by the district judge, is found in 28 U.S.C. § 636(c), which provides in pertinent part:

> (1) Upon the consent of the parties, a ... magistrate [judge] ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves....

> (2) If a magistrate [judge] is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate [judge] to exercise such jurisdiction. *The decision of the parties shall be communicated to the clerk of court.* Thereafter, either the district court judge or the magistrate [judge] may again advise the parties of the availability of the magistrate [judge], but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate[] [judges] shall include procedures to protect the voluntariness of the parties' consent.

28 U.S.C. § 636(c)(1) and (2) (emphasis added).

Needless to say, "when the magistrate [judge] enters judgment pursuant to 28 U.S.C. § 636(c)(1), absence of the appropriate consent and reference (or special designation) order results in a *lack of jurisdiction (or at least fundamental error that may be*

- 5 -

*complained of for the first time on appeal)*". **Mendes Junior Int'l Co. v. M/V Sokai Maru**, 978 F.2d 920, 924 (5th Cir. 1992) (citations omitted; emphasis added). Earlier, in **Archie v. Christian**, 808 F.2d 1132 (5th Cir. 1987) (en banc), our court had exercised its supervisory powers to require that, "before commencing the actual trial of any civil case in which a magistrate [judge] is to preside pursuant to the authority of 28 U.S.C. § 636(c), jury or nonjury, [the magistrate judge] shall inquire on the record of each party whether he has filed consent to the magistrate [judge]'s presiding and shall receive an affirmative answer from each on the record before proceeding further". *Id*. at 1137 (footnote omitted).

As noted, Muhammad, by and through her attorney, consented to disposition of this matter by the magistrate judge. Now, by and through that *same attorney*, she challenges the jurisdiction of the magistrate judge to act in the very manner to which she had consented. No authority need be cited for the long-established rules that personal, but *not* subject matter, jurisdiction can be waived; that we examine subject matter jurisdiction throughout a proceeding, concomitantly raising the issue *sua sponte* if need be; and that we freely review jurisdictional questions.

That said, we note that the Government does not contest Muhammad's, in essence, framing this issue as one of subject matter jurisdiction. Along that line, the Government does not urge that, in the light of the consent in district court, Muhammad is

- 6 -

precluded from raising this issue here.  This is in line with the above-quoted passages from **Mendes Junior Int'l Co.** and **Archie.**

We proceed in the same fashion.  *See, e.g.,* **Archie***,* 808 F.2d at 1134.  This notwithstanding, we are troubled greatly by counsel filing the consent, for and on behalf of his client, in district court, then participating in the commitment proceeding without any objection or other notice that the magistrate judge lacked jurisdiction, and then making that claim, albeit one of jurisdiction, for the first time on appeal.

In short, this issue should have been presented in district court for a host of obvious reasons; these include ensuring that Muhammad received the most expeditious treatment (should she be found in need of same), and judicial efficiency and economy.  While we do not question counsel's good faith in presenting the issue at this late date, we caution/note the obvious:  this is no way to proceed.  This issue should have been raised when this proceeding began approximately nine months ago.  *Cf.*  **Carter v. Sea Land Servs., Inc.***,* 816 F.2d 1018 (5th Cir. 1987), concerning a pre-trial attempt to withdraw consent to trial before a magistrate judge. Our court stated:

> We are not persuaded that a litigant has such a right.  We find nothing in the statute or the legislative history that requires continuing expressions of consent before a magistrate [judge] can exercise authority under a valid reference.  Nor will we accept the slippery-slope invitation to read into the statute a rule that would allow a party to

> express conditional consent to a reference, thereby obtaining what amounts to a free shot at a favorable outcome or a veto of an unfavorable outcome. Any such rule would allow the party to hold the power of consent over the magistrate [judge] like a sword of Damocles, ready to strike the reference should the magistrate [judge] issue a ruling not quite to the party's liking. We will not countenance such fast and loose toying with the judicial system.

*Id*. at 1020-21.

### 1.

Again, even though Muhammad's counsel signed the consent form agreeing to the transfer of this matter to the magistrate judge "for all purposes", Muhammad, *represented on appeal by the same counsel*, now contends that the consent was invalid because it was given by her lawyer, *rather than by her personally*. In support, she relies on ***Archie; EEOC v. West Louisiana Health Services, Inc.***, 959 F.2d 1277, 1281 (5th Cir. 1992), in which our court stated that "[c]onsent to trial by a magistrate [judge] under [§] 636(c) cannot be implied"; ***Glover v. Alabama Bd. of Corrections***, 660 F.2d 120, 124 (5th Cir. 1981) (citations omitted), in which our court stated that Congress intended to require "a clear expression of consent by the parties before allowing a magistrate [judge] authority under [§ 636](c)"; and Form 34 ("Consent to Exercise of Jurisdiction by a United States Magistrate Judge") of the Forms Following the Federal Rules of Civil Procedure, which provides for the signature of the party or parties.

a.

Although the cited statute and authorities refer to the consent of the *parties*, they do *not* state that an attorney's consent on behalf of his client is invalid for purposes of § 636(c). As the Supreme Court recognized in **Link v. Wabash Railroad Co.**, 370 U.S. 626 (1962), our judicial system is based on "representative litigation, in which each party is deemed bound by the acts of his lawyer-agent". **Id**. at 634; *see also* **National Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio**, 40 F.3d 698, 709 (5th Cir. 1994) (same); **Frank v. County of Hudson**, 962 F. Supp. 41, 43 (D.N.J. 1997) (attorney's consent to proceed before magistrate judge is sufficient). One can only imagine the havoc that would ensue should we allow otherwise.

b.

In any event, Muhammad maintains that the magistrate judge violated **Archie** by failing at the hearing to ask her on the record whether she had consented to proceed before a magistrate judge, or whether she was aware of the alternatives to such consent, or whether she was aware that her counsel had consented on her behalf. The requirement in **Archie** that the magistrate judge inquire of the parties on the record as to their consent was created to ensure that the record reflected that the parties had consented. In **Archie**, our court considered the consent issue *sua sponte*. 808 F.2d at 1133-34; **id**. at 1137 (Higginbotham, J., specially

- 9 -

concurring).  The court noted that the Federal Rules of Civil Procedure contain "explicit provisions safeguarding the voluntariness" of the consent required under § 636(c), and that the official forms contain a consent form for that purpose.  808 F.2d at 1135-36 & n.3; *see* FED. R. CIV. P. 73.  However, the parties in **Archie** apparently did not complete such a form.  *See id*. at 1137 (Higginbotham, J., specially concurring).  Accordingly, the record in **Archie**, *unlike* the record in the proceeding before us, contained no explicit evidence of the parties' consent.

Muhammad's counsel's signature on the consent form, which was filed in the record, satisfies **Archie**'s requirement that consent be on the record.

c.

Muhammad's contention that her right to a civil commitment hearing presided over by an Article III judge is an inherently personal right that can be waived only by her personal consent is likewise unavailing.  In **Winters v. Cook**, 489 F.2d 174, 179 (5th Cir. 1973) (en banc), our court held that the right of a criminal defendant, indicted for murder, to a constitutionally composed grand jury could be waived by the defendant's attorney.  Obviously, such a right is no more personal or important than Muhammad's claimed right to have an Article III judge preside over her commitment hearing.  *See also* **Carter**, 816 F.2d at 1021 (fundamental right can be waived).

2.

Next, Muhammad contends that, even assuming the validity of her counsel's consent on her behalf, the magistrate judge nevertheless lacked jurisdiction, based on her claim that 18 U.S.C. § 4245 commitment proceedings are not "civil" matters, and thus not covered by 28 U.S.C. § 636(c)(1). Muhammad points out that Title 18 is entitled "Crimes and Criminal Procedure", which she claims is significant because "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute". *Almendarez-Torres v. United States*, 523 U.S. 224, ___, 118 S. Ct. 1219, 1226 (1998) (internal quotation marks and citations omitted).

Muhammad asserts further that commitment proceedings are similar to habeas corpus proceedings, which are not civil actions for purposes of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321, codified at 18 U.S.C. § 3626. *See Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (habeas proceeding under 28 U.S.C. § 2241); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (habeas proceeding under 28 U.S.C. § 2254); *United States v. Cole*, 101 F.3d 1076, 1077 (5th Cir. 1996) (28 U.S.C. § 2255 proceeding). Muhammad contends that the same reasoning applies with even greater force in the context of § 4245 proceedings, in which a defendant is accorded constitutional and statutory rights unavailable to typical civil litigants. *See* 18 U.S.C. §§ 4245(c),

- 11 -

4247(d).  Citing *United States v. Williams*, 919 F.2d 266, 268-71 (5th Cir. 1990), in which our court held that magistrate judges are not authorized to adjudicate proceedings for the revocation of supervised release, Muhammad analogizes the constitutional and statutory protections applicable in § 4245 commitment proceedings to those applicable to proceedings for the revocation of supervised release.

In *Addington v. Texas*, 441 U.S. 418 (1979), the Supreme Court stated that "a civil commitment proceeding can in no sense be equated to a criminal prosecution".  *Id*. at 428.  *Addington* involved a Texas court's indefinite commitment of an ordinary citizen (*not a prisoner, such as Muhammad*) to a state mental hospital.  More to the point, the Fourth Circuit, addressing the due process requirements for commitment proceedings under § 4245, held that such proceedings *are civil matters*.  *See United States v. Baker*, 45 F.3d 837, 842 (4th Cir.) (citing *Addington*), *cert. denied*, 516 U.S. 872 (1995).  We agree with the Fourth Circuit that, in a § 4245 commitment proceeding, the Government's power is not wielded in a punitive manner.  *See Baker*, 45 F.3d at 844 ("The government's efforts to civilly commit a person are not punitive in nature"); *cf. Addington*, 441 U.S. at 428.  Likewise, we agree that a § 4245 commitment proceeding is "civil" in nature and can therefore be disposed of by a magistrate judge under § 636(c).

- 12 -

Muhammad's final basis for her lack-of-authority claim is grounded in the premise that such proceedings present compelling liberty interests and thus cannot be delegated to non-Article III judges. That Article provides, in pertinent part:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. CONST. art. III, § 1.

"Article III, § 1, serves both to protect the role of the independent judiciary within the constitutional scheme of tripartite government, and to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (internal quotation marks and citations omitted). Citing *Schor*, Muhammad contends that, although a litigant may, by consent, waive the "personal" right to an Article III judge, *id*. at 848-49, a litigant may not, by consent, waive the "structural" interest. *Id*. at 850-51.

In this regard, Muhammad maintains that, even though a § 4245 commitment proceeding is not a full-blown criminal proceeding, it nevertheless involves a similarly compelling liberty interest, the

deprivation of which cannot be delegated to a non-Article III adjudicator.  And, she asserts that another factor indicating that the disposition of § 4245 petitions by magistrate judges violates Article III is that their decisions are not subject to supervision, or *de novo* review, by Article III judges, but only to appellate review by the court of appeals, *see* 28 U.S.C. § 636(c)(3).

These contentions are totally without merit.  As stated, this is a civil proceeding.  Our court has already decided that parties in a *civil action* can consent to waive their constitutional right to trial before an Article III judge, and to the entry of judgment by a non-Article III judge.  *See* **Carter**, 816 F.2d at 1020-21; **Archie**, 808 F.2d at 1134 ("Certainly Congress must have believed that [§ 636(c)] was constitutional and that a magistrate [judge] exercising such powers—with the consent of the parties, one component of which was necessarily a waiver of their rights to an Article III presiding judicial officer—was doing so with jurisdiction, or it would not have enacted such a law"); **id**. at 1137 (citing **Puryear v. Ede's, Ltd.**, 731 F.2d 1153 (5th Cir. 1984)) ("we have upheld Section 636(c) against attack on constitutional grounds").

B.

Section 4245 provides, in pertinent part:

> (d) Determination and disposition.—If, after the hearing, the court finds by a *preponderance of the evidence* that the person is presently suffering from a mental disease

> or defect for the treatment of which he is in
> need of custody for care or treatment in a
> suitable facility, the court shall commit the
> person to the custody of the Attorney
> General....

18 U.S.C. § 4245(d) (emphasis added).

For the first time on appeal, Muhammad contends that the § 4245(d) preponderance of the evidence standard is unconstitutional; that due process requires that commitment determinations be instead supported by clear and convincing evidence. Muhammad relies on *Addington*, 441 U.S. at 433, in which the Supreme Court held that the involuntary civil commitment of an ordinary citizen for an indefinite period to a state mental hospital must be supported by clear and convincing evidence.

Muhammad concedes that, because she did not assert this claim before the magistrate judge, we review it only for plain error. *E.g.*, *United States v. Milton*, 147 F.3d 414, 420 (5th Cir. 1998); *Highlands Ins. Co. v. National Union Fire Ins. Co.*, 27 F.3d 1027, 1031-32 (5th Cir. 1994) (applying plain error standard in civil case), *cert. denied*, 513 U.S. 1112 (1995). For plain error, there must be a clear or obvious error that affects substantial rights. *Milton*, 147 F.3d at 420. "And, even then, we have discretion to correct such errors; generally, we will do so only if they 'seriously affect the fairness, integrity, or public reputation of judicial proceedings'". *Id*. (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Maintaining that the asserted error was clear or obvious, Muhammad urges us to use our discretion to reverse because of the serious consequences of civil commitment. But, we do not agree that there was a clear or obvious error. *Addington* is distinguishable; it dealt with the civil commitment of an ordinary citizen, *not a prisoner such as Muhammad*.

In *Jones v. United States*, 463 U.S. 354 (1983), the Supreme Court upheld the indefinite commitment of a criminal defendant who had been found not guilty by reason of insanity; that commitment was based on a preponderance of the evidence. *Id*. at 366-67. The Court distinguished *Addington* on the ground that there were "important differences between the class of potential civil-commitment candidates and the class of insanity acquittees that justify differing standards of proof". *Id*. at 367.

Closer to home, in *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court suggested that involuntary commitment of convicted felons, who are already confined in prison, is less a curtailment of liberty than the involuntary commitment of ordinary citizens. *Id*. at 491-93.

Congress apparently recognized such a distinction; 18 U.S.C. § 4246(d) requires clear and convincing evidence for the commitment of inmates whose sentences have expired and who are otherwise eligible for release from confinement. Obviously, there is far

less infringement of liberty involved in the commitment of prisoners who do not fall within § 4246(d).

For these reasons, and for the purposes of our narrow plain error review, it is, at the very least, arguable that the preponderance of the evidence standard specified in § 4245(d) satisfies due process requirements. Therefore, there was no "clear" or "obvious" error. That ends our review; there was no plain error.

C.

Contending that the Government failed to meet its burden of proving that she is a present danger to herself or others, Muhammad asserts that the Government did not establish that she is assaultive, violent, or disruptive; that the only danger is the risk that medical problems will go undetected because she refuses to undergo medical examinations. Muhammad maintains that the risk that she might suffer some illness which would go undiagnosed and untreated is not enough to override her substantial liberty interests in avoiding unwanted treatment. The Government concedes that Muhammad has a liberty interest in avoiding the unwanted treatment, but asserts that her interest is outweighed by the Government's important interest in preventing Muhammad from harming herself or others.

Section 4245 of Title 18 provides the procedures for hospitalization of an imprisoned person suffering from a mental disease or defect. Subsection (a) provides that, if the prisoner

or her attorney objects (as did Muhammad) to being transferred to a suitable facility for care or treatment, "an attorney for the Government, at the request of the director of the facility in which the person is imprisoned, may file a motion with the court for the district in which the facility is located for a hearing on the present mental condition of the person".  18 U.S.C. § 4245(a).  "The court shall grant the motion if there is reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility."  *Id*.

Subsection (c) requires the court to conduct a hearing on the motion.  Prior thereto, "the court may order that a psychiatric or psychological examination of the person may be conducted, and that a psychiatric or psychological report be filed with the court".  18 U.S.C. § 4245(b).  Subsection (d) provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. The Attorney General shall hospitalize the person for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier.

18 U.S.C. § 4245(d).

The district court granted Muhammad's pre-hearing motion for a psychiatric examination. However, at the 12 August 1998 hearing, Muhammad's counsel informed the magistrate judge that Muhammad would not cooperate or be examined by the psychiatrist chosen by Muhammad's counsel.

At the hearing, the Government introduced into evidence the report of its expert, Bureau of Prisons Chief Psychiatrist Dr. Shelley R. Stanton, dated only nine days before the hearing. Dr. Stanton reported that Muhammad was housed in a Special Housing Unit and refused to be housed in a less restrictive setting because of her belief that other inmates would attempt to kill her because she is Muslim; that Muhammad did not interact with staff or other inmates except when she needed something; that she spent virtually all of her waking hours engaged in ritualistic behavior surrounding her "religious delusions"; that she kept her back to the cell door and would not look at people when they talked to her; that she read and prayed all day and frequently tore pages out of religious books and glued them to the wall or window with toothpaste; that she refused to leave her cell to bathe, preferring to instead use the small sink in her cell; that she twice refused her own attorney's request that she be interviewed by a psychiatrist of his choosing; and that she had refused medical evaluation despite the existence of records indicating a diagnosis of severe anemia.

Dr. Stanton concluded that Muhammad's deterioration in functioning and her severe isolation were due to a "severe

psychotic process in which she suffers from persecutory and religious delusions". He diagnosed Muhammad as suffering from paranoid schizophrenia and anemia. Concerning the former, Dr. Stanton concluded:

> Typically, the individual suffering from this illness becomes severely paranoid and suspicious of those around her. She often believes she is the target of conspiracies and/or persecutions of others and can believe her life is in danger. These beliefs may cause the individual to engage in behaviors which are detrimental to her physical and emotional health and well being. These individuals typically avoid seeking any kind of psychiatric care because of the belief that such help is simply part of the ongoing conspiracy against them. These individuals often go to great lengths to protect themselves, sometimes even resorting to suicide or violence towards others because of the fear and distress they experience. The very nature of their illness precludes them from having insight into the need for treatment and prevents them from engaging in rehabilitative, recreational or social activities available within the institution.

Dr. Stanton concluded that

> [t]he prognosis for Ms. Muhammad is entirely dependent upon her receiving psychiatric medication and treatment. It is highly likely that medication will significantly reduce the intensity and scope of her paranoid thoughts and should result in significant improvement in her mental and physical functioning, such that she is able to take part in rehabilitative opportunities. Without such treatment, it is likely she will continue to remain in total isolation from even minimal social interactions and will continue to be housed in a single cell in a Special Housing Unit. In addition, any physical or medical problems that may be contributing to her current state will continue to go undiagnosed

- 20 -

and untreated because of her refusal of any and all such treatment.

Muhammad's counsel introduced into evidence a competency evaluation that had been performed approximately 16 months earlier, in April 1997. That evaluation had served to determine whether Muhammad was competent to stand trial for the March 1997 bank robbery. The evaluation reflects that Muhammad's trial counsel (the same lawyer who represents her on this appeal) had requested the competency evaluation because of his knowledge that Muhammad had a prior placement at a California mental hospital. The evaluator had then (April 1997) diagnosed Muhammad as suffering from a personality disorder not otherwise specified with schizotypal and compulsive features and severe anemia. The report concluded, however, that Muhammad was competent to stand trial because she did not seem to suffer from a severe mental illness or defect that would render her incompetent to appreciate the nature or consequences of the charges against her or to assist with her defense. The April 1997 evaluation notes that Muhammad was diagnosed with severe anemia in March 1997, and had suffered from it for 16 years; and that she was not interested in being treated for it.

Muhammad's counsel also introduced into evidence a competency report dated 31 August 1995, approximately three years prior to the commitment hearing, which concluded that Muhammad's competency had been restored. That evaluation notes that Muhammad had been

hospitalized in June 1995 with a diagnosis of psychosis, and was at that time receiving an antipsychotic psychotropic medication.

No other evidence was presented at the hearing. Muhammad twice declined the magistrate judge's invitation to make a statement to the court.

Muhammad's counsel argued at the hearing that, although Muhammad's religion, as she interpreted it, required her to take actions that most would view as bizarre and perhaps as counterproductive to her own health, she was not a danger to herself or others. The Government responded that it was often faced with lawsuits by prisoners claiming lack of proper medical attention, and that it had a duty to protect Muhammad's well-being.

The magistrate judge found that Muhammad suffered from a mental disease or defect and was in need of custodial care or treatment. He also found that Muhammad "is very much a danger to herself by her refusal to have medical treatment", as pointed out by Dr. Stanton, because whatever physical or medical problems she had or might have in the future would go undetected or undiagnosed.

We conclude that the Government met its burden of proving, by a preponderance of the evidence, that Muhammad was "presently suffering from a mental disease or defect for the treatment of which [s]he is in need of custody for care or treatment in a suitable facility". 18 U.S.C. § 4245(d). The only evidence of Muhammad's mental condition as of the date of the hearing was the report of the Government's expert psychiatrist, who opined that

Muhammad was suffering from a severe mental illness and was in need of psychiatric medication and treatment. That report constitutes sufficient evidence to satisfy the Government's burden of proof, especially in the light of the fact that Muhammad presented no evidence to contradict it.

D.

Finally, Muhammad contends that her commitment was ordered because she refused, in the light of her devout Islamic beliefs, to submit to medical examinations and take medication; and that the Government did not demonstrate a compelling interest to justify overriding her right to the free exercise of her religion under the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (RFRA).

Although Muhammad's counsel stated in a report ordered by the magistrate judge that Muhammad believed that the administration of medication would interfere with her religious faith, and, as noted, stated at the hearing that Muhammad's religion, as she interpreted it, required her to take actions that many would view as bizarre or counterproductive to her own health, he did not oppose the Government's petition on the ground that ordering Muhammad's commitment would violate the First Amendment or the RFRA. Accordingly, because this issue is being raised for the first time on appeal, we review it only for plain error.

Muhammad contends that the Government was obligated to establish a compelling governmental interest to justify infringing

- 23 -

her rights under the First Amendment and RFRA, and to use the least restrictive means of furthering that interest. The Government counters that, in a prison setting, it need demonstrate only a "legitimate penological objective", and that the court should defer to the judgment of prison administrators. The parties also disagree as to the constitutionality of the RFRA as applied to federal governmental action. *See* ***City of Boerne v. Flores***, 521 U.S. 507 (1997) (RFRA is unconstitutional as applied to the States because Congress exceeded its enforcement powers under § 5 of the Fourteenth Amendment); ***United States v. Grant***, 117 F.3d 788, 792 n.6 (5th Cir. 1997) (noting doubt as to continued viability of RFRA in federal context); *cf.* ***Christians v. Crystal Evangelical Free Church (In re Young)***, 141 F.3d 854, 856, 863 (8th Cir.) (RFRA is constitutional as applied to federal law), *cert. denied*, ___ U.S. ___, 119 S. Ct. 43 (1998).

We need not resolve these disputes because, even assuming *arguendo* the existence of error that is "clear" or "obvious" and affects Muhammad's substantial rights, we will not exercise our discretion to correct it in this instance. In the light of this record, we will not undermine one of the most important purposes of the plain error rule, which is to require parties to present issues to the district court for resolution, and potentially avoid unnecessary, wasteful appeals as to issues that the district court might have decided in the appellant's favor, had the court simply

been given an opportunity to do so.  This rule carries extra force when, as here, the issues are in whole or in part fact-driven.

Because Muhammad did not challenge her commitment on First Amendment or RFRA grounds, the Government had no opportunity to present factual evidence of either its compelling governmental interests or the legitimate penological, or other, objectives to be served by Muhammad's commitment, or to argue the legal issues of which standard applies or the constitutionality of RFRA as applied to federal governmental action.  Likewise, the magistrate judge had no opportunity to consider, or rule on, those issues.  Under these circumstances, the fairness, integrity, and public reputation of judicial proceedings are not seriously affected by our discretionary decision to enforce our long-standing, well-established, salutary requirement that issues be first considered by the district court.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*