

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2009

# Sanders v. Sec Dept Veterans

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1396

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Sanders v. Sec Dept Veterans" (2009). *2009 Decisions.* Paper 1758.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1758

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1396
_____

RICKEY SANDERS,
                    Appellant

v.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS

Appeal from the U.S. District Court for the
Western District of Pennsylvania
No. 04-cv-01804
District Judge: Honorable Terrence F. McVerry

Argued: September 9, 2008

Before: SCIRICA, Chief Judge, McKEE and SMITH, Circuit Judges.

(Filed: March 11, 2009)

Timothy P. O'Brien, Esq. (Argued)
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Counsel for Appellant

Mary Beth Buchanan, Esq.
Rebecca R. Haywood, Esq. (Argued)
Office of the United States Attorney
700 Grant Street, Suite 4000

Pittsburg, PA 15219

<u>Counsel for Appellee</u>

---

OPINION

---

**MCKEE,** Circuit Judge.

Rickey Sanders appeals the district court's grant of summary judgment in favor of R. James Nicholson, Secretary of the Department of Veterans Affairs ("VA"). The VA was Sanders' employer, and Sanders brought this Title VII suit alleging employment discrimination and retaliation. He was a temporary laundry worker in the VA's Pittsburgh Healthcare System, and alleged that his contract had been allowed to expire and that he was not hired for a permanent position, initially on account of his race and religion, and subsequently in retaliation for a complaint he filed alleging discrimination. The district court granted the VA's motion for summary judgment, holding that Sanders failed to rebut the employer's nondiscriminatory reason for terminating Sanders' employment and also holding that Sanders failed to present a *prima facie* case of retaliation. For the reasons that follow, we will reverse the district court's grant of summary judgment.[1]

---

[1] By the time the district court ruled on the VA's summary judgment motion, Sanders had abandoned his claim of employment discrimination based on race and religion. In its Memorandum Opinion and Order, the district court explained that

## I. Background

Sanders was hired to work in the laundry of the VA facility in Pittsburgh, as a one-year temporary worker, beginning in October of 2000. During the hiring process, he gave an incomplete answer on his job application regarding his criminal record. Thereafter, during a routine criminal background check, the VA discovered that Sanders had four criminal charges that he had not listed on his job application.[2] On June 4, 2001, the Human Resources department sent a letter to Sanders informing him that he needed to provide additional information regarding the disposition of these charges within 15 days and/or offer any comments or explanation.[3]

In the meantime, in June 2001, Sanders applied for a part-time permanent job in the laundry at the VA. Bill Glass, his supervisor, initially selected Sanders to fill one of the five openings. However, Human Resources informed Glass that Sanders could not be hired because unresolved questions about his criminal background rendered him

---

"Sanders' claim is . . . that, on account of his protected activity, he was retaliated against by the Veterans Administration by failing to extend his temporary appointment[,] . . . and retaliated when he was not selected for the position announced in December 2001." App. 3a. Accordingly, we will only address the rejection of Sanders' claim of a retaliatory dismissal.

[2] The relevant unreported charges were: (a) possession of marijuana, delivery and conspiracy; (b) rape, indecent assault and unlawful restraint; (c) reckless endangerment, disorderly conduct and harassment; and (d) sale of firearms and unsworn falsification to authorities.

[3] Sanders claims that he never received the June letter, and that he instead found out about the problems with his background check in a conversation with a Human Resources official early in July.

"unsuitable" for federal employment. On July 19, upon instruction from his supervisor and personnel within Human Resources, Glass selected a different candidate to fill the permanent position.

By letter dated July 17, 2001 (well after the 15 days Sanders was given to respond to the concerns about his background), Sanders' defense attorney provided the VA with the requested information about the criminal charges.[4] On July 26, 2001 (a week after Glass had decided not to select Sanders), the VA issued a favorable decision regarding Sanders' suitability for federal employment - based in part on a favorable recommendation from Glass. The next day, Sanders received a letter informing him that he had been deselected for the open laundry positions.

After learning that he had not been selected and then deselected because of the outstanding background questions, Sanders called the VA's Office of Resolution Management ("ORM") and alleged that his non-selection was the result of illegal racial and religious discrimination. Sanders is Black and is a Muslim. The ORM responded by contacting Glass, and William Battisti, Glass's supervisor. Both explained that Sanders had not been selected because of the then-ongoing background investigation into his suitability. The ORM report further notes:

> Mr. Battisti stated that the selection for the permanent part-time laundry worker [posted in June] has already been made. Based on the recommendation of William Glass, it was decided not to terminate the aggrieved employee due

---

[4] Sanders received a probationary sentence on the marijuana and firearms charges, and the rape and reckless endangerment charges were dismissed.

4

to the inaccuracy of the information submitted on his original application for employment. Due to this decision, management is looking to find a permanent position for the aggrieved employee, however there is no position available at this time.

App. 301a (ORM Counselor's Report).

Sanders also submitted evidence of a meeting held in August 2001 between himself, Glass, Battisti, and Paul Sutton, the union representative at the VA. The meeting was held to discuss the reasons for Sanders' deselection and to talk about what would happen next. Sanders alleges that Glass and Battisti specifically promised him that he would be hired for the next available permanent position in the laundry or that his temporary contract would be extended until they could find something for him. On September 10, 2001, Sanders filed a formal complaint based on the VA's failure to hire him for any of the positions that opened in June. He alleged racial and religious discrimination.

Meanwhile, the laundry posted two more permanent job openings in September. Sanders applied again, but was not hired. Battisti testified that Sanders was not selected for these positions because Sanders was on "light-duty" status. Glass, the manager and person primarily responsible for hiring, testified that Sanders' "light-duty" restrictions were not the reason Sanders was not hired, but Glass could not recall why Sanders was passed over.[5]

_____

[5] Any claim relating to the September job openings is not properly before us, as Sanders failed to exhaust his administrative remedies with regard to that hiring decision. This does not mean, however, that the VA's failure to hire him for these positions cannot

On October 22, 2001, Sanders' temporary job assignment expired and his employment was terminated. He thereafter filed another complaint with ORM. Sanders believes the failure of the VA to extend his temporary contract or rehire him on a temporary or permanent basis was based on a retaliatory motive arising from the complaint of discrimination that he filed. Although Sanders' was hired to fill a temporary position, he alleges that his contract could have been extended and such extensions were fairly routine. However, he nevertheless admitted in his deposition that several other temporary workers were "let go" at approximately the same time he was. Glass and Battisti conceded that it was sometimes possible to extend the contracts of temporary workers, but denied any specific agreement to extend Sanders' appointment.

On December 20, 2001, the VA announced "one (1) laundry worker WG-73014-1 Permanent Part-Time," position in the Pittsburgh facility, with a closing date for filing applications on December 27, 2001. (App. 197-98). Sanders submitted a timely application for this position, but Glass did not select him. Rather, Glass offered the job to a candidate with a Bachelor of Arts degree and a Masters Degree. That candidate had no prior laundry experience, and he submitted his application after the deadline for applications. The first candidate ultimately declined the job. Glass then hired an applicant with a college degree, who lived outside the area but wished to relocate to

---

be relevant to Sanders' other claims. *Cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (holding that Title VII statute of limitations does not "bar an employee from using [] prior acts as background evidence in support of a timely claim.").

Pittsburgh.

Sanders contends that by Glass's own admission, Sanders was better qualified for the job than the successful applicants, because Sanders had a successful and reliable work history in the laundry room. However, Glass testified that both of the men who were offered the position were better qualified because they had a longer work history than Sanders. Nevertheless, Glass admitted in his deposition that he did not verify the work history of either of the other candidates. Glass also testified that sometime around February 2002, he bumped into Sanders at the VA facility and Sanders told him that he had just accepted a food service worker position. The VA cites this as an additional reason for not hiring Sanders, but Sanders denies that this conversation ever took place.

## II.

The district court had subject matter jurisdiction pursuant to 42 U.S.C. § 2000e and 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the district court's grant of summary judgment, and apply the same standard applicable in the district court. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). We thus review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001). Summary judgment should be granted only where "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

7

**III.**

Our analysis of Sanders' retaliation claim is governed by the familiar three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04(1973). *See also Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the framework to retaliation claims). Accordingly, Sanders must make out a *prima facie* case of retaliation. To do so, he must present sufficient evidence to establish (1) that he engaged in protected conduct; (2) that an adverse action was taken; and (3) a causal link between the protected conduct and the adverse action. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994). Once a *prima facie* case is presented, the burden of production shifts to the employer to articulate a non-retaliatory explanation for the challenged employment decision. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997).

If a non-retaliatory reason is proffered, it is then the plaintiff's burden to prove that the employer's articulated reason is a pretext and that retaliation was the true motive. *Id.* "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Moore*, 461 F.3d at 342 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)); *see also Fuentes*, 32 F.3d at 655 (holding that a plaintiff may satisfy his burden by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer

8

that the employer did not act for the asserted non-discriminatory reasons.") (internal quotations omitted) (emphasis in original).

## IV.

The district court concluded that the VA's failure to extend Sanders' temporary assignment was not an "adverse employment action" and that he could therefore not establish a *prima facie* case of employment discrimination under Title VII. The court reasoned:

> The express terms and conditions of Plaintiff's employment with the VA were that he was hired for a one year, temporary position, with an anticipated expiration date of October 21, 2001. Plaintiff acknowledges that the appointment would not exceed the date of October 21, 2001, and that he could be terminated at any time without the use of adverse action or reduction in force procedures. Plaintiff also acknowledges that he knew that his temporary appointment did not entitle him to a permanent position. []
>
> Plaintiff's termination clearly resulted from the automatic expiration of his temporary appointment.

(App. 11.)

The district court's factual conclusions are correct. However, the court's analysis ignores Sanders' deposition testimony that Battisti told him that he would be hired into the next available permanent position or that his temporary assignment would be at least extended. (App. 236.) In ruling on a motion for summary judgment, the district court must accept that allegation as true. By focusing exclusively on the temporary nature of Sanders' position, the district court ignored evidence of a specific promise to extend

9

Sanders' contract. Moreover, the VA does not deny that it was possible to extend Sanders' contract; rather, it asserts that there was no commitment to do so. The VA also points to the dismissal of several other workers whose contracts had expired around the same time period and argues that is evidence that there was no retaliatory motive.

The VA's argument may well be accepted by a factfinder. However, the factfinder could also accept Sanders' testimony that a promise of continued employment was made to him and that the VA reneged only after he charged his employer with discrimination. The record would therefore support a finding that had Sanders not filed a complaint, his temporary position would have been extended as promised. *See Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53, (2006) (holding that, in retaliation case, the requisite adverse action is one which " well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotation marks and citations omitted). The jury is, of course, entitled to disbelieve Sanders' version of events, but that issue of fact must be resolved by a factfinder, not by a court. Thus, although Sanders may well face an uphill battle in establishing that retaliation was indeed the reason his contract was not renewed, he has put forth enough evidence to survive summary judgment on this point. It is therefore a battle that he is entitled to wage.

## V.

Similarly, with regard to the VA's failure to hire Sanders for the open position advertised in December, the District Court found that:

> While Plaintiff baldly alleges that Defendant's actions were pretextual, the Court finds that the record is completely devoid of any evidence of pretext. After careful review of this record, this Court concludes that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of Defendant's legitimate non-retaliatory reason for not selecting Plaintiff for the permanent, part time position.

(App. 13.) However, based upon our review of the record, we conclude that Sanders has produced sufficient evidence to allow a factfinder to disbelieve the VA's stated reasons for not hiring him for the December position, although it is an exceedingly close call.

Sanders offered evidence of an agreement to place him in the next available permanent position after he was not selected for the June 2001 opening. He testified in his deposition that in the August 2001 meeting, Glass and Battisti said they would try to put him in the "next available position." (App. 236a). Sanders corroborated this testimony with a report from the ORM of its investigation of Sanders' initial complaint relating to the June 2001 position. (App. 301a.) The October 2001 report states that in response to ORM's inquiry, Mr. Battisti stated that "management is looking to find a permanent position for the aggrieved employee, however there is no position available at this time." (*Id.*) Sanders also offered the deposition testimony of Mark Sutton, his union representative, who testified that after the August meeting he called a Human Resources representative to see if any progress had been made in finding Sanders a position. Sutton testified that he was told that "[Sanders] had taken it to [the Equal Employment Office] so everything was on hold." (App. 155.)

Viewing this evidence in a light most favorable to Sanders, we cannot conclude

11

that a reasonable factfinder would not see the VA's offer to hire Sanders into the "next available" position, and its subsequent failure to do so as circumstantial evidence of a retaliatory motive. Undisputed evidence showed that Sanders was generally a good and reliable worker who got positive performance reviews and had a good working relationship with his supervisor. While the VA maintains that other applicants for the December position were better qualified, Sanders has offered evidence that creates a factual issue about that assertion.[6] Sanders is entitled to have this credibility dispute resolved by a jury.

## VI.

We therefore conclude that the evidence of record, when viewed in the light most favorable to Sanders, does raise a genuine issue of material fact about whether the VA had a retaliatory motive for not renewing Sanders' position or for not offering him the December position. Although the evidence supporting illegal retaliation is clearly circumstantial, such evidence of pretext need not be direct; indeed, in today's business environment, such evidence will almost never be direct. *See, e.g., Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1086 (3d Cir. 1996). For the foregoing reasons,

---

[6] Specifically, Sanders submitted deposition testimony from Glass wherein Glass stated that first-hand knowledge of an applicant's work ability in a laundry facility would be an important factor in a hiring decision. (App. 254-262) He also testified that Sanders "did a fine job" and he "would have loved to have him work for me." (App. 262.) Sanders also submitted evidence showing that in January of 2002, right before making the hiring decision, that Battisti, at least was aware of Sanders' pending discrimination claim because he was asked to supply information to the ORM. (App. 361-63; 380a.)

12

we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.